———o———

## HARRISON *v.* FINDLEY.

SLANDER.—Both judges and jurors shall understand words in that sense which the author intended to convey to the minds of the hearers, as evinced by the whole circumstances of the case. It is the province of the jury, where doubts arise, to decide whether words were used maliciously, and with a view to defame; such being matter of fact to be collected from all concomitant circumstances; and for the court to determine, whether such words, taken in the malicious sense imputed to them, can, alone or by the aid of the circumstances stated in the record, form the legal basis of an action. Page 270.

SAME.—The doctrine of construing words in *mitiori sensu,* has been exploded. Page 270.

SAME—DEMURRER.—If any set of words charged in any one of the paragraphs of a complaint for slander is actionable, a demurrer to that paragraph ought to be overruled. Page 270.

ACTIONABLE WORDS.—As to what words are actionable, see opinion.

APPEAL from the *Jackson* Circuit Court.

GREGORY, J.—*Harrison* sued *Findley* in slander. The complaint consists of three paragraphs. The words charged in the *first* paragraph are these:

"1. *Enoch Harrison* is getting along too fast; they are doing a large business there; people wonder where they get their capital; there have several travelers died there, and it is the opinion of the people that they have been hurried away; it appears that none of them had money enough left to bury them. I saw something there one morning myself that satisfied me. I was at *Enoch Harrison's* one morning, and saw water dropping through the ceiling. I took it on myself to go up stairs, and see what all that meant, and then I found his wife scrubbing up

the floor; she looked down-hearted when she saw me. I asked her what that meant, and she faintly replied that a traveler had died there. It appears he had not money to bury him. It is supposed he was hurried away.

"2. *Harrisons* are getting along too fast; doing a large business; some people wonder where they got their capital. I saw something there myself that satisfied me how they got it. I was there one morning, and saw something dripping through the ceiling, and I took it upon myself to go up stairs and see what it meant, and found *Enoch's* wife scrubbing up the floor, and she said a man had died there. That man was hurried out of the way, and had not money enough left to bury him. Several travelers have died there, and it appears that none of them had money enough left to bury them, and it is the general opinion that they were hurried out of the way for their money.

"3. He (meaning plaintiff) is getting along very fast, and doing a slashing business; some folks do n't know how he got his money. I saw enough there (meaning at plaintiff's house) myself one morning to satisfy me; there was something dripping through the ceiling, and I went up stairs to see what it meant, and found his (meaning plaintiff's) wife scrubbing up the floor, and asked her what that meant, and she said a traveler had died there. Several travelers have died there, and none of them had money enough left to bury them; they were all put out of the way for their money.

"4. I went to *Enoch Harrison's* one morning, and saw enough there myself to satisfy me where he gets his money. There was something dripping through the ceiling, and I asked what it meant, and was told that a traveler had died there, and it seems he had not money enough left to bury him. He was put out of the way for his money. Several travelers have died there, and none of them had money enough left to bury them. He got their money, and that accounts for his getting along

so fast. Several travelers have been put out of the way there (meaning at plaintiff's house) for their money, and he got it; none of them had any left to bury them. His (meaning plaintiff's) wife said a traveler had died there (meaning at plaintiff's house.) He was hurried out of the way for his money, and had not enough left to bury him; more than one traveler has been hurried out of the way there, (meaning at plaintiff's house,) and none of them had money enough left to bury them, and that's how he gets along so fast.

"5. They are getting along too fast; they have hurried more than one traveler out of the way for his money, and did n't leave them enough to bury them."

The plaintiff, for the purpose of making these words actionable, charges "that at the time of the speaking by the defendant of plaintiff of said defamatory matter, plaintiff was and for a long time had been the keeper of a house of entertainment for travelers and boarders, and that the defendant then and there and thereby, by each and every of the foregoing sets of words, intended to charge and to be understood that plaintiff had feloniously robbed, and by violence taken from the persons in his said house their money, and had killed and murdered such travelers, and caused it to be done for the like purpose of robbing them, and to escape detection and punishment therefor; and that defendant then and there and thereby, was so understood to charge the plaintiff by those who heard him speak said words."

The words charged in the *second* paragraph are these: "I have found out all about the bottle; I am able to prove that they (meaning plaintiff and another) fixed it up. I learned at *Corners*, in *Iowa*, that they (meaning one *John Ruddick* and one *Hiram Wheedon*) had the bottle there, and that was the cause of their (meaning said *Ruddick* and said *Wheedon*) death, and I believe that was the cause of their death," (meaning then and there and thereby that plaintff had fixed up a bottle for the purpose, and that

the same had caused the death of said *John Ruddick* and said *Hiram Wheedon*.) For the purpose of making these words actionable, the plaintiff "avers that said *John Ruddick* and said *Hiram Wheedon* had, before the time of speaking of said defamatory matter of plaintiff by defendant, died in the state of *Iowa*, which fact was then understood by those who heard defendant; and that said defendant then and there, by said defamatory matter, meant and intended to charge that plaintiff, by fixing up a bottle for that purpose, had feloniously and purposely caused the death of said *Ruddick* and *Wheedon*, and defendant was then and there and thereby so understood to mean and charge plaintiff by those who heard such matter."

The words charged in the *third* paragraph are these: 1. "*Wheedon* and *Ruddick* took a bottle of whisky from *Seymour* that *Harrison* had fixed and sealed up, and the orders from *Harrison* were not to drink it nor unseal it till they (*Ruddick* and *Wheedon*) got to *Iowa*, and then they were to drink a health to their old friends; and when they got to their journey's end, they drank it, and died right away, and it is supposed it killed them."

2. "*Ruddick* and *Wheedon* took the bottle of whisky from *Harrisons*, but the orders were not to unseal it till they got to *Iowa*, and then to drink out of it a health to the *Harrisons*, and to their old friends; and when they got to *Iowa*, they drank it, and died right away, and it is supposed that killed them. *Harrisons* had fixed it up and sealed it."

3. "Do you know any thing about the bottle that *Harrisons* fixed up? They say that they fixed one up, and *Ruddick* and *Wheedon* took it with them to *Iowa*. *Harrison's* directions to them were not to uncork it or unseal it till they got to their journey's end; and when they got to *Iowa* they drank it, and died the same day."

4. "Have you heard the report about old uncle *Davy* and *Enoch* fixing up two bottles of whisky, and charging

*Ruddick* and *Wheedon* not to drink it until they landed in *Iowa?* They died in three or four days after they drank it; there must have been something in it."

5 " There is no doubt but they got the money. I learned that they prepared a bottle of whisky, and sealed it up, and gave it to *Ruddick* and *Wheedon*, and charged them very particularly not to unseal it till they crossed the line and got to *Corners*, where there was no good liquor; then they were to unseal it, and drink a health to their old friends. Do n't you see how nice that could have been worked, to fix up a bottle of whisky, get their money, then after they got to *Iowa* to drink and die the same day, and that would be the last of it, as dead folks tell no tales? That report is out, and it looks reasonable."

6. " I found out all about that bottle of whisky; I am able to prove that they (meaning this plaintiff and another) fixed it up. I learned at *Corners*, in *Iowa*, that *Ruddick* and *Wheedon* had it there, and that it was the cause of their death, and I believe it."

7. " They fixed up a bottle of whisky and gave it to *Ruddick* and *Wheedon*, who took it with them to *Iowa*, and drank it, and it killed them both."

8. " Do n't you see how nice they managed it? After they (plaintiff meaning) got their money, (meaning the money of *Ruddick* and *Wheedon*,) they fixed them up a bottle of liquor, and told them not to drink it till they got to *Iowa*, and they drank it there, and died in a few days; they thought dead men tell no tales, and managed it accordingly."

To make these words actionable, the plaintiff " avers that defendant, in speaking of the plaintiff the defamatory matter aforementioned, alluded to the death, in the state of *Iowa*, of one *John Ruddick* and one *Hiram Wheedon*, which had occurred before the times of the speaking by defendant of plaintiff of such defamatory matter, which fact was well understood, then and there, by those who thus heard defendant defame this plaintiff; and that defendant

then and there, by each and every of the foregoing sets of words, meant to be understood and charged, and did charge then and thereby, that this plaintiff had feloniously and purposely caused the death of said *John Ruddick* and that of the said *Hiram Wheedon*, and that defendant was then and thereby so understood to mean and to charge this plaintiff by those who heard him."

A separate demurrer was sustained to each of said paragraphs, and a final judgment on demurrer rendered in the court below against the appellant. The sufficiency of these several paragraphs of the complaint is the subject for our determination.

The rule laid down by Mr. *Starkie*, in his Treatise on Slander, and approved by this court in the case of *Rodgers* v. *Lacey*, at this term, is as follows: "Both judges and jurors shall understand words in that sense which the author intended to convey to the minds of the hearers, as evinced by the whole circumstances of the case. It is the province of the jury, where doubts arise, to decide whether the words were used maliciously, and with a view to defame; such being matter of fact, to be collected from all concomitant circumstances; and for the court to determine whether such words, taken in the malicious sense imputed to them, can alone, or by the aid of the circumstances stated upon the record, form the legal basis of an action."

The doctrine of construing words in *mitiori sensu* has been exploded. *Caddock* v. *Briggs*, 13 Mass. 248; *Bloss* v. *Tobey*, 2 Pick. 320; *Demarest* v. *Haring*, 6 Cowen, 76.

If any set of the words charged in any one of the paragraphs demurred to is actionable, the court below ought to have overruled the demurrer to that paragraph.

In the light of the rule above stated, we are of opinion that the demurrers to the *first* and *third* paragraphs of the complaint ought to have been overruled. We think some of the sets of words charged in each of these paragraphs are actionable *per se*, and others are made so by the "aid of the circumstances stated upon the record."

The second, third, fourth, and fifth sets of words in the *first* paragraph are actionable *per se*, and the first set is made so by the facts, alleged.

The fourth, fifth, and eighth sets of words in the *third* paragraph are actionable *per se*, and the first, second, third, and seventh sets are made actional by the facts alleged.

In the case of *Peake* v. *Oldham*, Cowper's Rep. 275, Lord *Mansfield* held, after verdict, that the words, "I am thoroughly convinced that you are *guilty*," (*innuendo* that you are guilty of the *death* of said *Daniel Dolly*,) "and rather than you should go without a hangman, I will hang you," were actionable.

In the case of *Ford* v. *Primrose*, 5 Dowling & Ryland, 287, (16 Eng. Com. Law, 234,) it was held by all the judges of the Court of King's Bench that the words, "I think the present business ought to have the most rigid inquiry, for he (the plaintiff) murdered his first wife; that is, he administered improperly medicines to her for a certain complaint, which was the cause of her death," were actionable. *Bayley*, J., said, "I take it that if a man, by the improper administration of medicines to another, cause his death, that would be manslaughter; and if he administers medicines with an intent to produce death, it would be murder. I think the words declared upon import at least a charge of manslaughter."

In the case of *Gorham* v. *Ives*, 2 Wendell's Rep. 536, it was *held*, that if the words spoken, in connection with the circumstances of the case, leave no reasonable doubt that it was the intention of the defendant to impress upon the mind of the hearers the belief that a forgery had been committed by the plaintiff, an action would lie.

We have not examined with care the *second* paragraph of the complaint, for the reason that the ground covered by that paragraph is embraced in the *third*. There can be no available error in sustaining a demurrer to a paragraph where the same matter is charged in another.

This court in the case of *Drummond* v. *Leslie*, 5 Blackf.

453, *held*, that although the words laid in a declaration in slander do not contain a directly affirmative charge that the plaintiff had committed forgery, yet if they were calculated to induce the hearers to *suspect* that the plaintiff had committed it, they are actionable.

The judgment of the Circuit Court is reversed; cause remanded to said court, with directions to overrule the demurrer to the first and third paragraphs of said complaint, and for further proceedings. Costs here.

*Wm. K. Marshall*, and *R. M. Patrick*, for appellant.