### ROE AND WIFE v. CHITWOOD.

SLANDER: *Fornication: Adultery.*

By the common law a complaint, which alleges that the defendant charged the plaintiff with fornication or adultery, shows no cause of action unless it alleges special damage; but by statute it is sufficient without the allegations of special damages.

APPEAL from *Crawford* Circuit Court.
Hon. J. H. ROGERS, Circuit Judge.

*F. W. Compton, H. F. Thomason*, for appellants:
Demurrer improperly sustained. *Gantt's Digest, sections* 1544, 4565.

ENGLISH, C. J.    Action for slander in the circuit court of Crawford county. Complaint in substance, as follows:

I.   The plaintiffs, Berry Roe and Malinda V. Roe, state that they are husband and wife, and that the defendant, Joseph Chitwood, heretofore, to wit:    On the twenty-first day of March, 1877, at, etc., in a certain conversation or discourse, which the said defendant, then and there, had of and concerning the said plaintiff, Malinda V. Roe, to and

in the hearing of one Berry Nations, after stating to said Nations that a certain woman, named Jane Palmer, was a base whore, falsely used, uttered and published of and concerning the said plaintiff, Malinda V., the false, scandalous and defamatory words following, that is to say, "and Berry Roe's wife (meaning the said plaintiff, Malinda V.), is no better," thereby, then and there meaning that the said Malinda V. was a base whore, and had been guilty of the crime of adultery.

II. And for a second cause of action said plaintiffs further state that said defendant, in a certain conversation or discourse, which he had with one Drew Stroup, on the day and year aforesaid, in the county aforesaid, of and concerning the said plaintiff, Malinda V., did falsely use, utter and publish, the false, scandalous, malicious and defamatory words following, that is to say, "I have said that Berry Roe's wife (meaning the same Malinda V.) is no better than Jane Palmer (whom the said defendant had often before that time denounced as a whore), and I yet say it, and can tell it to any court," thereby, then and there meaning that said plaintiff, Malinda V., was a whore, and had before been guilty of the crime of adultery.

Wherefore, the said plaintiffs allege that they have sustained damages to the sum of ten thousand dollars, for which they pray judgment, etc.

The defendant entered a general demurrer to both causes of action in plaintiffs' complaint, which, by consent, was taken in short on the record. The court sustained the demurrer, and the plaintiffs resting, final judgment was given for defendant, and plaintiffs appealed.

As early as the thirteenth of December, 1837, it was enacted that: "If any person shall falsely use, utter or publish words, which, in their common acceptation, shall amount to charge any person with having been guilty of

fornication or adultery, such words, so spoken, shall be actionable." *Rev. Stat., ch. 141, sec. 1; Eng. Digest, chap. 152, sec. 1; Gould's Digest, chap. 161, sec. 1.*

· In the slander act of March 19, 1869, there is this section: "If any person shall falsely use, utter or publish words, which, in their common acceptation, shall amount to charge any person with having been guilty of fornication or adultery, such words, so spoken, shall be deemed slander, and shall be actionable and indictable as such." *Gantt's Digest, sec. 1544.*

The only difference between the two statutes is, that the former made the words actionable and the latter made them not only actionable but also indictable.

By the common law it is not actionable, *per se*, to charge one with fornication or adultery (*Townsend on Slander and Libel, secs. 160, 172*), the words imputing no offense punishable by indictment, etc.

To make a cause of action for such words, special damages must be alleged. *Ib., 198; Castleberry et ux. v. Kelly et ux., 26 Georgia, 606; Wagaman v. Byers, 17 Maryland, 187.*

But the statute makes words, which in their common acceptation, amount to charge any person with having been guilty of *fornication or adultery* actionable. Such words have been made actionable by statutes of several states. *Townsend on Slander and Libel, sec. 153.*

In Missouri, to impute adultery or fornication is actionable by statute. In *Stieber et ux. v. Wensel, 19 Mo., 513,* the words spoken were in German, but when translated into English were that the plaintiff's wife was a whore; that she went to church and whored with priests; and the court held that the words were actionable under the statute, without the allegation of special damages.

In *Hudson v. Garner, 22 Mo., 423,* the female charged with being a whore was unmarried, and, by innuendo, it

was alleged in the petition that defendant meant to charge her with adultery; and the court held that the word "whore," when applied to a single woman, amounted to charge her with fornication; that it was actionable under the statute, and that the matter alleged, by way of innuendo, might be treated as surplusage.

So, in *Moberly v. Preston and wife, 8 Mo., 462,* the words were that the plaintiff's wife had a child before she was married, and the words were held actionable under the statute as imputing fornication.

In Indiana, by statute, to impute to a female fornication or adultery is actionable.

In *Shields and wife v. Cunningham, 1 Blackf., 86,* the words charged in the complaint were that "Doctor Eddy made an appointment with Elizabeth Cunningham (meaning plaintiff), scaled the walls and went to bed to her (meaning plaintiff), at Mrs. Reperton's house (thereby meaning that the plaintiff had committed fornication)." The court said: " The words laid in the declaration clearly import a charge of fornication. A phraseology more indecent might have been used, but no set of words, however plain and explicit, would have conveyed the idea with more certainty, or have been productive of a result more mischievous and fatal in its consequences."

In *Worth v. Butler, 7 Blackf., 251,* the words spoken were charged to have been: " I (meaning defendant) have heard that Miss Fanny Butler (meaning plaintiff) has had a child, and buried it in the garden four or five years ago (meaning and intending that plaintiff had been delivered of a bastard child, and had been guilty of fornication)."

The court considered the words as amounting to a charge of fornication, and held them actionable under the statute.

In *Guard v. Risk, 11 Ind., 156,* the complaint charged that defendant on, etc., at etc., spoke the following false

and slanderous words of plaintiff, viz.: "That he could prove that Lucinda Risk (meaning plaintiff) slept with George Vestell two nights (thereby meaning that she, the plaintiff, had committed fornication)." The court held that the import of the words was too obvious to admit of any mistake as to their meaning, and that they were actionable.

In *Proctor v. Owens, 18 Ind., 21*, the following words were held to be actionable, *per se:* "Baden saw, or told me, that on Sunday, at the camp-meeting, he either scared or drove Jane Owens and a man supposed to be Jo Dearmond up from behind a log; he and others supposed it to be Jo Dearmond; they broke and run; I (Baden) got her parasol and handkerchief, and, if any one don't believe me, they can come and see them."

The court said the words were slanderous and actionable, *per se.* "To be sure," said Justice WORDEN, "adultery is not directly and in terms charged; neither is it necessary that it should be. Thus, in *Drummond v. Leslie, 5 Black., 453,* it was held that, if the words were calculated to induce the hearers to suspect that the plaintiff was guilty of the crime, they were actionable." And, after citing *Shields v. Cunningham* and *Guard v. Risk, sup.,* the judge added: "In neither of these cases was adultery charged, but was left to be inferred from the facts charged. The inference that adultery was committed was ·no doubt naturally and correctly drawn from the facts charged. So, here, if Baden scared or drove the parties up from behind a log at a camp-meeting; if they broke and run; and if, in the plaintiff's flight and perturbation, she left behind her parasol and handkerchief, which fell into the hands of Baden as trophies, the conviction naturally and almost irresistably forces itself upon the mind that adultery was either committed or about to be committed. At all events,

it would cause persons to very strongly suspect that such was the case."

In *Blickenstaff et al. v. Perrin, 27 Ind., 527*, the complaint alleged that defendant charged plaintiff with having been a week in a whore-house in Lafayette. The words were laid in different forms, with proper averments, and a *colloquium*, to show that she thereby meant and intended to charge the plaintiff with whoredom. The words were proved as alleged. The court said: "It is agreed by appellant's counsel that the words laid in the complaint, and testified to by the witness, do not of themselves necessarily imply a charge of whoredom, and that to sustain the action, the evidence should have gone further and shown that the words were spoken in a conversation in reference to the plaintiff's character for chastity, and were understood in a criminal sense. It is now well settled, in such cases, that words are to be understood in their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed. In ascertaining the meaning of the speaker, reference must be had to the words used and the circumstances under which they are uttered, and the author is presumed to have used them in the sense which their use is calculated to convey to the minds of the hearers. *Harrison v. Findley, 23 Ind., 265; Rogers v. Lacey, ib., 507; O'Conner v. O'Conner, 24 ib., 218.* Here, we think the words proved to have been used convey to the mind the charge that plaintiff was guilty of whoredom, although they are susceptible of a different construction. It was the province of the jury to determine the sense in which they were spoken, and, having done so, we can not disturb the verdict.

"In a late edition of *Starkie on Slander*, after a review of the English cases on this question, the following propo-

sitions are stated as the result: 1. That where words are capable of two constructions, in which sense they were meant is a matter of fact to be decided by the jury. 2. That they are to be guided in forming their opinion by the impression which the words or signs used were calculated to make on the minds of those who heard or saw them, as collected from the whole of the circumstances. 3. That such words or signs will, after verdict for plaintiff, be construed by the court to have been used in the worst sense."

If, in this case, the charge had been that defendant said of the plaintiff's wife that she was no better than Jane Palmer, and nothing more had been alleged, the words would not have been actionable under the statute. But the charge is, in the first count of the complaint, that defendant said that Jane Palmer was a base whore, and that the wife plaintiff was no better, and the charge in the second count is substantially the same. The natural inference is that he meant to say that she was a whore, which amounted to a charge of adultery, she being a married woman.

If he meant to charge some other immorality, or fault of character, to the wife of the plaintiff, why did he compare her with a woman whom he denounced as a whore. The words, we think, were calculated to make the impression upon any person who may have heard them that he meant to charge that the wife plaintiff was a whore.

At least the complaint makes a case which should have gone to a jury, and the court should not have sustained a general demurrer to it.

Reversed and remanded for further proceedings.