JACKSON *v.* WILLIAMS.

Opinion delivered December 6, 1909.

1. LIBEL AND SLANDER—WORDS ACTIONABLE PER SE.—Under Kirby's Digest, § 1854, providing that "if any person shall falsely use, utter or publish words which, in their common acceptation, shall amount to charge

any person with having been guilty of fornication or adultery, such words, so spoken, shall be deemed slander, and shall be actionable and indictable as such," *held* that the court should, in a proper case, instruct the jury that it is actionable *per se* to charge one with having been guilty of fornication. (Page 488.)

2. SAME—MEANING OF WORDS.—In actions for slander or libel the words are to be taken in their plain and natural meaning, and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used and the ideas they are adapted to convey to those who heard or read them. (Page 489.)

3. INSANITY—SUFFICIENCY OF PROOF.—Evidence that a woman is at the change of life and that she is subject to hysteria and to fits of rage is insufficient to justify submission to the jury of the question whether she is mentally irresponsible. (Page 489.)

4. HUSBAND AND WIFE—LIABILITY OF HUSBAND FOR WIFE'S TORTS.—The common-law rule that a husband is liable for a slander committed by his wife in his absence and without his participation has not been abrogated by the married women's statutes of this State. (Page 490.)

Appeal from Craighead Circuit Court, Lake City District; *Frank Smith,* Judge; reversed.

*Carroll & Turner,* for appellant.

Whether words are actionable *per se* is a question of law for the court. 121 N. Y. 199; 23 Ind. 265; 98 Tenn. 139; 129 Ala. 349; 55 Ark. 498; 55 Atl. 287; 86 Ark. 56; 16 Ia. 252.

*Huddleston & Taylor,* for appellee.

Whatever will preclude plaintiff's right of recovery may be given in evidence. 2 Ark. 415; 3 Ark. 552. It is too late to except to the qualifications of a juror after verdict. 23 Ark. 51; 35 Ark. 109; 70 Ark. 244; 15 Ark. 403. The husband is not liable for the torts of his wife, committed during coverture out of his presence, and in which he in no manner participates. 14 L. R. A. (N. S.) 1009; *Id.* 1003; 30 L. R. A. 521.

HART, J. This is an action of slander brought by the plaintiff, Dora Jackson, against the defendants, J. M. Williams and Nancy Williams. The defendants are husband and wife. The complaint sets out the exact language which constituted the slander, and the allegation is sustained by the evidence. It is not necessary to repeat the language here; but it is sufficient to say that the defendant Nancy Williams in divers conversa-

tions with her neighbors, in plain terms, charged that the plaintiff had been guilty of fornication with her husband and co-defendant, and that such charge was false. Her husband was not present at any of the conversations, and had no knowledge of her intended acts. In a trial before a jury, a verdict was returned in favor of the defendants. From the judgment rendered upon the verdict the plaintiff has appealed.

It is first insisted by her counsel that the court erred in giving instructions Nos. 2 and 3. They are as follows:

"2. You are instructed that if you find from the evidence that plaintiff (defendant) had what reasonably appeared to her to be grounds for making the charges, then, if any damages at all are recoverable, it would be only compensatory damages."

"3. You are instructed that, although you may find from the evidence that Mrs. Williams called the plaintiff 'a whore' or any other name importing unchastity, yet if you further find that such name or names was used by Mrs. Williams and was understood by the persons to whom they were addressed as mere epithets, and not intended to charge the want of chastity which would be implied by their ordinary acceptation and definition, then and in that event the plaintiff could recover only such damages, if any, as resulted from the use of said language. But if Mrs. Williams did in fact use words which in their ordinary import charge unchastity, the burden would be upon her to show that they were not in fact so uttered and understood."

In this they are correct, for the statute makes the words spoken actionable *per se*. The instructions were faulty because they left to the jury to determine whether or not the language was actionable *per se*.

The words used were not capable of two constructions. Their plain and natural import was to charge that the plaintiff had been guilty of fornication with the defendant J. M. Williams. The court should have told the jury that the words were actionable *per se*, and should not have left them to believe that it was their province to determine that fact. Section 1854 of Kirby's Digest is as follows:

"If any person shall falsely use, utter or publish words which, in their common acceptation, shall amount to charge any

person with having been guilty of fornication or adultery, such words, so spoken, shall be deemed slander, and shall be actionable and indictable as such."

The words spoken being actionable *per se,* the court should have so instructed the jury as a matter of law. *Greer* v. *White,* 90 Ark. 117; *Murray* v. *Galbraith,* 86 Ark. 50; *Stallings* v. *Whittaker,* 55 Ark. 494; *Roe* v. *Chitwood,* 36 Ark. 210.

Instruction No. 3 is also erroneous because it was calculated to impress upon the minds of the jury that plaintiff was not entitled to recover at all, if they should find that the defamatory words were not intended to injure her character, and that they were not understood by the persons to whom they were addressed as having been spoken with the intent to injure plaintiff.

In the case of *Greer* v. *White, supra,* the court held (quoting syllabus): "In actions for slander it is immaterial what meaning the defendant intended to convey by the language used if the words complained of are in fact slanderous." The authorities on the question are there reviewed, and it is useless to repeat them here. As stated in 25 Cyc. 335, "the rule now is that the words are to be taken in their plain and natural meaning, and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used and the ideas they are adapted to convey to those who heard or read them."

Counsel for appellant also contends that the court erred in giving the following instruction:

"6. You are instructed that if you find from the evidence that at the several times Mrs. Williams uttered the charges set out in the complaint she was mentally irresponsible by reason of ill-health or other cause then plaintiff can not recover. By 'mentally irresponsible' is meant such condition of the mind as that she did not know what she was saying or understand the purpose and effect of her words. But the burden of proving such condition is upon the defendant."

The instructions should not have been given, for the reason that there was not sufficient evidence upon which to base it.

J. M. Williams testified as follows:

"Q. Tell the jury what was the condition of her health and the result of it upon her health at the time this trouble came up? A. My wife is right at the change of life, and from my study and observation I have learned that it is a very critical period of a woman's life. They are more subject to hysteria and other mental troubles at that time, and I think she is. She gets into fits of rage sometimes, and it takes me and the boys both to control her. Q. Tell the jury if that was her condition at the time this trouble came up. A. Yes, sir; it seems that it has been working on her for two or three years."

This was all the evidence upon which to predicate the instruction. The effect of the instruction was to invite the jury to find for the defendants upon a mere surmise that Mrs. Williams was insane at the time she spoke the slanderous words concerning the plaintiff, when in fact there was no substantial evidence to support such belief. The prejudice which resulted from the instruction is plainly shown from the fact that the jury did find for the defendants when the undisputed evidence showed that the defamatory words were spoken, no attempt was made to establish their truth, and the evidence on the part of the plaintiff showed them to be false.

The defendant J. M. Williams invokes the rule announced in the case of *St. Louis Southwestern Ry Co.* v. *Grayson,* 89 Ark. 154, and cases cited, and insists that the judgment as to him should not be reversed because the verdict and judgment were right. As a basis for his contention, his counsel insist that the common-law rule that the husband is liable for the slander of his wife, not committed in his presence and in which he did not in any mnaner participate, has been abrogated by the passage of our statutes with reference to the rights and liabilities of married women. Similar statutes have been passed in many of the States, and the authorities are in direct conflict as to their effect upon the liability of the husband for the torts of his wife, not committed in his presence and of which he had no knowledge, or in which he did not participate. The authorities on both sides of the question are cited and reviewed in the opinions of and notes to, the cases of *Kellar* v. *James,* 14 L. R. A. (N. S.) 1003, and *Morgan* v. *Kennedy,* 30 L. R. A. 521.

A majority of the judges are of the opinion that the trend of our decisions is to the effect that the common-law rule has not been abrogated, and that the husband is still liable.

In the case of *Kies* v. *Young*, 64 Ark. 381, this court held that "the common-law liability of a husband for his wife's ante-nuptial debts has not been abrogated by the married woman's act, which excludes the marital rights of the husband in the wife's property during coverture, and confers upon married women power to acquire and hold property."

In the opinion, Mr. Justice RIDDICK, reasoning by analogy, used the following language: "The liability of the husband at common law for the torts of the wife not committed in his presence rests upon substantially the same reason as his liability for her ante-nuptial debts," and cited with approval the decisions in such cases of those States which hold that the passage of the married woman's act does not abrogate the common-law rule. The learned judge concluded by saying: "As the Legislature which enacted the married woman's act did not, either by express words or by clear implication, express an intention to repeal such law, the presumption should be that they intended the rule to remain." They say that the reasoning of the court applies with equal force here, and that, while under our statutes married women have absolute control over their separate property, yet, owing to the marital relation, the husband's control over her conduct and actions remains, and that it would be impracticable, in cases when the tort was committed by the wife, for the courts to determine when she had acted at her own instance, and when she was guided by her husband. The opinion of the majority on this point becomes the opinion of the court. I do not agree with the opinion of the majority. I think that a wife's "brain and hand and tongue are her own," and that the control of the husband and wife over the personal conduct of each other is reciprocal. This is a plain case for the application of another rule of the common law that where the reason of the rule fails the rule fails with it.

For the error in giving instructions Nos. 2 and 3 as indicated in the opinion, the judgment is reversed, and the cause remanded for a new trial.