## BURNETT v. COBB. (No. 2337.)

(Court of Civil Appeals of Texas. Amarillo. May 21, 1924.)

**1. Husband and wife ⊂⊃325—Wife may now maintain suit for alienation of husband's affection.**

Wife may now maintain suit for damages for alienation of husband's affections.

**2. Husband and wife ⊂⊃325—Malicious intent is essential element in alienation of affections.**

Malicious intent is an essential element in wife's suit for alienation of affections.

**3. Husband and wife ⊂⊃325—Defendant liable for alienation of affections if aiding his wife with knowledge of her purpose.**

If the acts which defendant did in aiding his wife in alienating affections of plaintiff's husband were done with design or knowledge of her purpose he was liable as a joint tort-feasor, but if his acts were merely aids, unwittingly furnished, there was no liability.

**4. Husband and wife ⊂⊃146—Statute held not merely to affect plaintiff's remedy against husband for her independent tort.**

Vernon's Texas Civ. Stats. 1922, Supp. art. 4621, providing that the separate property

---

shall not be liable for the wife's torts, destroys the right of action against the husband for the independent torts of his wife, if the husband was liable before such act, and does not merely affect the remedy, and hence does not apply to torts committed before its passage.

**5. Husband and wife ☞327—Suit may not be prosecuted against husband alone for wife's alienation of another's affections.**

If the husband is liable for alienation of another's affections by his wife, the suit cannot be prosecuted against him alone.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Mattie Cobb against T. L. Burnett. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

McLean, Scott & Sayers and Bullington, Boone, Humphrey & Hoffman, all of Fort Worth, and John Murphee, of Iowa Park, for appellant.

Davenport, Cummings & Thornton, of Wichita Falls, for appellee.

BOYCE, J. Mrs. Mattie Cobb brought this suit against T. L. Burnett, to recover damages for the alienation of the affections of her husband, J. J. Cobb, resulting in their separation and divorce. It was alleged that Lucile Burnett, wife of T. L. Burnett, by blandishment and solicitation of intimate and improper association with J. J. Cobb, caused him to lose his affections for the plaintiff and to transfer them to herself. It was also alleged that T. L. Burnett aided and encouraged Lucile Burnett in her wrong. A trial resulted in judgment for the plaintiff.

Some objection is made to the sufficiency of appellant's brief. Without discussing these objections in detail we may say that we think the brief is sufficient to require a consideration of the following questions, a determination of which is sufficient to dispose of all the propositions presented:

(1) Whether the plaintiff may legally maintain this suit for damages for the alienation of her husband's affections. (2) Whether the record sustains the judgment on the theory that appellant is a joint tort-feasor with Lucile Burnett, participating in her wrong in such a way as to render him liable, independent of the relation of husband and wife. (3) Whether appellant is liable in this suit for the tort of his wife, Lucile Burnett, in the absence of such participation therein as would render him liable as an independent or joint tort-feasor.

We will discuss these questions in the order stated.

[1] 1. While there are a few authorities to the contrary, the overwhelming weight of modern authority is to the effect that the wife, under laws similar to those of this state, may now maintain a suit such as is here prosecuted. Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, and notes, 114 Am. St. Rep. 605, 6 Ann. Cas. 658; Sims v. Sims, 79 N. J. Law, 577, 76 Atl. 1063, 29 L. R. A. (N. S.) 842, and notes; Weber v. Weber, 113 Ark. 471, 169 S. W. 318, L. R. A. 1915A, 67, Ann. Cas. 1918C, 743; Speer's Law of Marital Rights, §§ 94 and 95; Nickerson v. Nickerson, 65 Tex. 281. While the very fact case has not been decided in this state, the decision in the case of Nickerson v. Nickerson, supra, is based on analogous facts and when read in connection with the authorities above cited leaves no ground for serious question as to the plaintiff's right to maintain this suit.

2. A discussion of the second question calls for some further statement of the record which we here make, as follows: The plaintiff in her petition, after statements as to her marriage to J. J. Cobb and their subsequent living together happily, the marriage of T. L. Burnett and Lucile Burnett, and their living together during the time of the commission of the wrong against plaintiff, the alienation of J. J. Cobb's affections for the plaintiff by the said Lucile Burnett, "with evil design and intent," alleged, further, that such action of Lucile Burnett was done "with the aid and encouragement of the defendant, T. L. Burnett." In this connection it was specifically alleged that Lucile Burnett was a woman of impure life before and after her marriage to defendant, and such fact was known to him; that defendant permitted and encouraged association between Lucile Burnett and plaintiff's husband; that he furnished whisky, which was drunk together by plaintiff's husband and Lucile Burnett and others, and that at times the defendant himself participated in these drinking parties; that he furnished J. J. Cobb a key to the locker in which the whisky was kept so that he could have ready access to the same, and generally that T. L. Burnett "participated in the wrongful acts and conduct of the said Lucile Burnett, which resulted in the alienation from the plaintiff of the affections of her said husband." Defendant admitted that he knew that Lucile Burnett was a woman of impure life before his marriage with her, though he testified that he thought up until the time of his separation from her that she was true to him after the marriage. He and Lucile Burnett lived on his ranch. J. J. Cobb was his foreman and the two families lived in separate houses on the ranch. Defendant admitted that he kept whisky in a locker at his home and that he sometimes drank with his wife and Cobb and others. He testified that he was trying to keep his wife from drinking too much and gave the key to the locker to Cobb so that she could not have as ready access to the whisky. The evidence shows such constant association between Cobb and Lucile Burnett as that it ex-

cited comment and aroused suspicion on the part of the other employees on the ranch, as well as the plaintiff. The defendant denies knowledge of most of this association and the evidence shows that part of it at least was clandestine. The evidence does show that on one occasion at least the appellant permitted his wife to accompany Cobb in his automobile on a trip to another part of the ranch and that on several occasions Cobb came with his wife in an automobile to meet the defendant when he was coming in on the train at night. Defendant also knew that on occasions his wife permitted and invited his cowboy employees to kiss her. His version of this was that this was done in open, comradely greeting or sport, and "he thought nothing of it." When he was finally informed by plaintiff of his wife's infidelity, he attacked Cobb and engaged in a personal difficulty with him and discharged him from the ranch. He also separated from Lucile Burnett and secured a divorce from her. The jury found in response to special issues that Lucile Burnett maintained "improper intimate association with J. J. Cobb, with intent on the part of said Lucile Burnett to alienate the affections of the said J. J. Cobb from the plaintiff." An issue was submitted which called for a finding as to whether the defendant, T. L. Burnett, "aided or encouraged said association between the said Lucile Burnett and J. J. Cobb." The jury did not answer this issue, and the court, upon request of the jury, submitted two issues instead: One, whether the defendant aided in the improper association of his wife and Cobb, which the jury answered, "Yes;" and the other, whether the defendant encouraged such improper association, which the jury answered, "No."

[2, 3] Malicious intent is an essential element of the tort here sued on. Geromini v. Brunelle, 214 Mass. 492, 102 N. E. 67, 46 L. R. A. (N. S.) 465, and notes; Barton v. Barton, 119 Mo. App. 507, 94 S. W. 574, 582; Briles v. Briles, 66 Ind. App. 444, 112 N. E. 449; Heisler v. Heisler, 151 Iowa, 503, 131 N. W. 676, 13 R. C. L. p. 1466, § 515. It is said in the Missouri case cited that—

"The case is for an intentional and not a negligent tort; one in which each defendant must have designed to cause the resultant mischief."

Appellant was charged with liability on the ground of aid and encouragement in his wife's wicked design; in other 'words, as a a joint tort-feasor.

"Joint tort-feasors are held responsible, not because of any relationship existing between them, but because of the concerted action towards a common end. * * * All persons who aid, counsel, direct or join in committing a tort are joint tort-feasors. The liability of a joint tort-feasor may attach by direct participation * * * or the liability may arise out of counsel, direction or command by one to another to commit a tort. The liability here, however does not arise out of mere relationship. But a person who merely gives leave for a tort to be committed is said not to be a joint tortfeasor. * * * Mere presence at the commission of a wrong, as an assault, does not attach liability as principal; but encouraging, inciting and even presence without disapproval, in connection with other circumstances, may have that effect." Jaggard on Torts, vol. 1, pp. 210, 211.

"It is the established rule that, in the absence of a common design and concert of action on the part of defendants each defendant is responsible for his own acts, and is in no degree responsible for the acts of the others or the damage caused by them." Citizens' Railway & Light Co. v. Atwood (Tex. Civ. App.) 138 S. W. 1102.

If design be an essential element of this tort it follows that before T. L. Burnett could be held responsible as a joint tort-feasor with Lucile Burnett, it should appear that the acts which he did, and which are charged as being aids in the accomplishment of Lucile Burnett's purpose, were done with such design or with knowledge of the purpose of Lucile Burnett. If such acts were merely aids, unwittingly furnished, there would be no liability. Claxton v. Pool (Mo. Sup.) 197 S. W. 349, 352 (4), L. R. A. 1918A, 512; Pooley v. Dutton, 165 Iowa, 745, 147 N. W. 154; Leavell v. Leavell, 114 Mo. App. 24, 89 S. W. 57; Bonte v. Postel, 109 Ky. 64, 58 S. W. 536, 51 L. R. A. 187. We cannot know just what the jury had in mind in making the answers referred to. The most reasonable explanation of the finding is probably that the jury thought that the acts of T. L. Burnett were unwitting aids in his wife's purpose and that he had no intention of aiding her in maintaining improper relations with plaintiff's husband. At least the meaning of the verdict is not sufficiently clear, we think, to sustain the judgment under the theory of the law we are now discussing.

[4] 3. The wrong was committed against the plaintiff prior to the time of the passage of the act of 1921 which now expressly provides that the separate property shall not be liable for the torts of the wife. Article 4621, Vernon's Texas Civil Statutes, 1922, Supp. But the appellant contends that this part of the law affects the remedy only, and should nevertheless be applied here. If, under the old law, the plaintiff had a cause of action against the husband, T. L. Burnett, for the independent tort of his wife, the new law, which would destroy this right, cannot. be held, we think, to affect the remedy merely. So that we think the decision of this phase of the defendant's liability is not to be affected by the act of 1921.

At common law the husband was liable for the tort of his wife, independent of any participation therein. A number of authorities of other states hold that statutes which

recognize the right of the wife to own and manage her separate property put an end to this common-law rule by implication because the reason on which the rule was founded ceased with the enactment of such laws. Martin v. Robson, 65 Ill. 129, 16 Am. Rep. 578; Claxton v Pool (Mo. Sup.) 197 S. W. 349, L. R. A. 1918A, 512; Schuler v. Henry, 42 Colo. 367, 94 Pac. 360, 14 L. R. A. (N. S.) 1009; Hageman v Vanderdoes, 15 Ariz. 312, 138 Pac 1053, L. R. A. 1915A, 491, Ann. Cas. 1915D, 1197. In this connection see Speer's Law of Marital Rights, §§ 264 and 265. These authorities would be directly applicable to the situation in this state after the passage of the Married Woman's Act of 1913, prior to its amendment in 1921, and if they are to be followed would in any event absolve the husband from liability in the absence of guilty participation in the wrong. Numerous authorities, however, have taken the other side of the question, holding that the common-law rule of liability was not repealed by implication by laws which provided for the ownership and control by the married women of her separate property. See the following cases and notes: Morgan v. Kennedy 62 Minn. 348, 64 N. W. 912, 30 L. R A. 521, 54 Am. St. Rep. 647; Keller v. James, 63 W. Va. 139, 59 S. E. 939, 14 L. R. A. (N. S.) 1003; Jackson v. Williams, 92 Ark. 486, 123 S. W. 751, 25 L. R. A. (N. S.) 840. Our Supreme Court had held, prior to the act of 1913, that the common-law rule still obtained in this state. McQueen v. Fulgham, 27 Tex. 464, 467; Zeliff v. Jennings, 61 Tex. 458, 470. In the latter case the case of Martin v Robson, supra, was referred to, and it was said that the court was "not disposed to adopt the reasoning of the court in that case." In the case of Whitney Hardware Co. v. McMahan, 111 Tex Sup. 242, 231 S. W. 694, in which the alleged tort was committed after the act of 1913 was in force, it was said by the Supreme Court that—

"Our statutes dealing with the rights of husband and wife have been uniformly construed as leaving the wife, as well as the husband, liable for the torts of the wife."

We take it, therefore, that our Supreme Court would hold that in the ordinary case arising prior to the amendment of 1921 the husband would be liable for his wife's tort.

There is this fact, however, which in a case of this kind, in the event the husband did not participate in the wrongful conduct of the wife, might warrant the allowance of an exception to such rule of liability, to wit, that the wrong in such case is against the husband of the erring wife as well as against the wronged woman. The Springfield Court of Appeals of Missouri held that in such case the husband was not liable. Claxton v. Pool, 182 Mo. App. 13, 167 S. W. 629 (11). The Supreme Court of Missouri, however, did not approve that holding. Id., 197 S. W. 352 (5), L. R. A. 1918A, 512. See comment on this case, L. R. A. 1918A, 517. In the case of Nickerson and Matson v. Nickerson, 65 Tex. 281, where the husband and another committed a tort against the wife, who sued the husband and such third person, such party in combatting the right of the wife to maintain the suit against him, was contending that the damges for the tort would be community property and the wife could not sue therefor. The Supreme Court allowed the fact that the husband was a party to the wrong to make a difference in the general rule and held the damages in such case to be the separate property of the wife, for which she could sue. This case is not, of course, directly in point here, but is valuable as showing that the courts sometimes refuse to follow blindly a rule when it leads to absurd and unjust results. The reason for holding that a husband was liable for the torts of his wife was because all her property at common law passed to him on marriage. The wife's identity was submerged in that of the husband so that there ought to be a compensating responsibility, and further, "mainly upon the supposition that her acts are the result of the superior will and influence of the husband." Zeliff v. Jennings, 61 Tex. 471. Our laws have changed the rule which gave the wife's property and its management to the husband, so that the husband's liability in this state was placed on the latter ground stated. How absurd to "suppose" that the wife's wrongful act, which injures an innocent husband equally with the third party, is the "result of the superior will and influence of the wronged husband," as a basis for holding the husband liable under such circumstances. In such case we would be strongly inclined to follow the decision of the Missouri Court of Appeals.

[5] But, if it should be held that the husband's liability may be maintained on the theory last discussed, yet it seems that in such case the suit may not be prosecuted against the husband alone, and such fact stands in the way of an affirmance of the judgment on this theory The appellee's attorneys, both in their brief and in oral argument, concede this to be true, and such investigation as we have made of the authorities confirm this view. Wheeler & Wilson Mfg. Co. v. Heil. 115 Pa. 487, 8 Atl. 616, 2 Am. St. Rep. 575; Mahoney v. Roberts, 86 Ark. 130, 110 S W 225; Kowing v. Manly, 49 N. Y. 192, 10 Am. Rep 352; 30 C. J. 784.

If we are correct in these conclusions it follows that the judgment must be reversed. It is accordingly so ordered and the cause remanded.