ROBERTS *v.* LOVE.

5-2072                                                333 S. W. 2d 897

Opinion delivered March 28, 1960.

[Rehearing denied May 2, 1960]

*B. Ball,* for appellant.

*Philip E. Dixon, Duval L. Purkins,* for appellee.

CARLETON HARRIS, Chief Justice. On March 3, 1959, appellant, a practicing attorney of Warren, Arkansas, was notified by a deputy sheriff of Bradley County that Circuit Judge G. B. Colvin, Jr., had requested Roberts to appear at the court house. Upon arriving at the court house, appellant found that the Circuit Court was in session, and that A. C. Duncan, a Negro, was charged by Information with the crime of assault with intent to rape, the charge relating to the alleged attempt to rape a white high school girl. Judge Colvin appointed appellant to defend the Negro. After talking to the defendant in a private consultation room, appellant returned to the courtroom, and observed that a representative of the local newspaper, "The Eagle Democrat", had obtained permission from the court to take pictures. Appellant objected to the taking of pictures, and the court withdrew its permission. Upon being asked to enter a plea, Roberts moved that the court commit the defendant to the State Hospital for thirty days observation.[1] Following remarks, hereinafter set out, by the prosecuting attorney and judge, the motion was granted.

---

[1] Under the provisions of Initiated Act No. 3, adopted at the general election of 1936.

On March 5th, in its regular weekly edition, the following story (one column width) relative to the proceedings in the courtroom, appeared in the Eagle Democrat:

"ATTACKER SENT TO HOSPITAL FOR OBSERVATION

Through a legal technicality, Judge G. B. Colvin, Jr., Tuesday, was forced to send A. C. Duncan, admitted culprit in an attempted rape case here, to the State Hospital for 30 days of observation.

Duncan's hearing before Judge Colvin was held Tuesday evening, and Paul K. Roberts, Warren attorney, was appointed as the Negro's lawyer.

When Duncan was asked to make a plea of guilty or not guilty, Attorney Roberts arose and made a motion that he be sent to the State Hospital for observation. Roberts said he thought the Negro might be insane.

Prosecuting Attorney A. James Linder of Hamburg asked Roberts if he really thought that or if he was 'grasping for straws'. Roberts assured the Court that he felt the Negro might be insane.

Judge Colvin deliberated about the matter for several minutes before granting Roberts' motion, but he told those present that under the law, he was forced to do it.

At the start of the hearing, a representative of this newspaper received the permission of Judge Colvin to take candid camera pictures while the hearing was going on. After court started, however, Attorney Roberts raised an objection to the photographer's being allowed to take pictures. No more were taken.

Duncan admitted to Chief of Police Tommy Dunaway and to the Editor of The Eagle Democrat Wednesday that he raised the window of an East Central Street home here, went in the window, and attempted to attack a high school senior girl. He said he wasn't being forced or coerced into making the statement, but that he was making it of his own free will."

On September 12th, appellant instituted suit against appellees for libel, alleging that the story was libelous, being partly false, and the true portions "slanted" to convey the impression that he was insincere in his defense, and had endeavored to defeat justice by trickery; that the publication was maliciously made in an effort to damage appellant's professional standing, and that he had been damaged in his reputation, and had suffered great loss of business by reason of said publication. Compensatory damages were sought in the amount of $250,000, and a like amount was asked for punitive damages.

Appellees demurred to the complaint, and subsequently moved that certain paragraphs of the complaint be stricken for the reason that said paragraphs were irrelevant, redundant, argumentative, and prejudicial. This motion was granted, the demurrer sustained, and the suit dismissed. From such judgment comes this appeal.

Appellant first asserts that the Circuit Judge should have disqualified himself. Ark. Stats. Anno., § 28-604 (1947), provides:

"The judge or juror may be called as a witness by either party, but, in such cases, it is in the discretion of the court to suspend the trial and order it to take place before another judge or jury; and where a party knows, at the time the jury are impaneled that a juror is to be called by him as a witness, he shall then disclose it, and the juror shall be excluded from the jury."

We have held that a judge cannot testify for the state in a criminal case pending before him, *Rogers* v. *State,* 60 Ark. 76, 29 S. W. 894, but whether a chancellor is disqualified to hear a case in which he is called to testify, is a matter within his discretion. *Fidelity & Deposit Co.* v. *Cunningham,* 181 Ark. 954, 28 S. W. 2d 715. Dean Ralph C. Barnhart of the University of Arkansas Law School, in an article, "Theory of Testimonial Competency and Privilege", 4 Ark. Law Review, 377 (1950), discusses the matter of determining whether a judge should disqualify himself in situations where he will be called to testify. At page 389 of the article, it is stated:

"The arguments that counsel will hesitate to make objections to the judge's testimony, or that if counsel does object, it may lead to unseemly conflicts between the judge and the counsel, that testimony by the judge tends to give undue advantage to the party in whose favor he testifies, plus the procedural difficulties of the judge's making the necessary rulings while he is on the stand, are not without weight. These considerations naturally are taken into account by the judge in the exercise of his discretion in continuing to sit or suspending trial and ordering it to take place before another judge after he has testified, and it is to be assumed that a proper exercise of discretion will avoid any real cause for objection."

In the case before us, such a situation does not actually arise, for here the judge was not called to testify, nor was any jury impaneled; rather, the litigation was disposed of by demurrer, and we find no abuse of discretion in the trial judge passing upon the pleadings.

While we think it immaterial in this litigation, we agree with appellant that the court erred in striking paragraphs 4A, B, C, D, and E. The article, obviously, cannot be classed as libelous *per se*. Any alleged libel, therefore, required innuendo denoting the libelous sense in which the words were intended. As stated in 53 C. J. S., *Libel and Slander*, § 162b 2(a), at page 249:

"Where the publication is defamatory on its face, or the meaning of the publication is plain and unambiguous, no innuendo, or explanation of the words published or spoken, is required. If, however, the words are not *per se* actionable, there must be an innuendo showing, by reference to facts stated in the inducement, the injurious sense imported by the charge. So, where the words used are susceptible of two meanings, one defamatory and the other harmless, plaintiff must by innuendo ascribe to them their defamatory meaning.  *  *  *

An innuendo, when necessarily pleaded, forms an essential portion of the statement of a cause of action for defamation which must be considered in determining the legal sufficiency of the complaint."

We therefore, in reaching our determination of whether the article was libelous, consider each averment in appellant's complaint.

Appellant only alleges one statement in the article to be actually false; *i.e.,* the opening phrase, "Through a legal technicality  *  *  *." Appellant alleges as follows:

"A.  'Through a legal technicality Judge G. B. Colvin, Jr., Tuesday was forced to send A. C. Duncan, admitted culprit in an attempted rape case here, to the State Hospital for 30 days for observation.'  That the above paragraph was false in that a 30 day observation period for any person accused of crime is a substantive right rather than a legal technicality; that the above paragraph was false and was known to be false when written and said paragraph was designed to leave the impression with all who read said article and did leave the impression with all who read said article that the action on the part of the attorney in moving the court for a 30 day observation period was an unwarranted and improper act of the attorney and that it was not properly a part of the attorney's duty toward his client; that the above quoted paragraph was designed to leave the impression and did leave the impression with all who read same that Judge G. B. Colvin, Jr., was forced to commit the said A. C. Duncan for 30 days observation through chicanery practiced by the attorney and that the court was being forced to do something unusual and out of the ordinary; that the above quoted paragraph was designed to leave the impression that the court was forced to commit the accused to 30 days observation by a technical, legal loophole in which there was no merit whatever, which again was false."

Appellant states that because of the use of the term "legal technicality", which he alleges to be false, the complexion of the entire content of the article was changed.  Appellant contends that the motion to send Duncan to the State Hospital for observation was a substantive right rather than a legal technicality.  Webster's New International Dictionary, 2nd edition, defines the

word "legal" as "of or pertaining to law; arising out of, or by virtue of, or included in law; based upon or governed by". Technicality is defined as "a particular which is technical, or peculiar to any trade, profession, sect, or the like, especially in terminology or method of procedure; as, medical and legal 'technicalities'." It would therefore appear that a dictionary definition of "legal technicality" is simply "legal procedure." Appellant asserts, however, that the actual meaning of the term is not controlling, to which we agree, and that the applicable rule is found in *Jackson* v. *Williams*, 92 Ark. 486, 123 S. W. 751, wherein we said:

"* * * the rule now is that the words are to be taken in their plain and natural meaning, and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used and the ideas they are adopted to convey to those who heard or read them."

Under this rule, appellant argues that the term legal technicality denotes to the public mind "chicanery"; implies that one prevails, not because of right, but rather through trickery; in other words, in the matter before us, that justice was thwarted by unfair methods.

We do not agree with appellant that these words have that meaning to the general public. We are of the opinion that the term "legal technicality" connotes, to those unfamiliar with legal terms, the impression that the matter, or question passed on, was decided on grounds *other than the merits of the case.* By no stretch of the imagination can we visualize the words being understood to mean "to prevail by trickery or chicanery." Such a construction would, in our view, be unreasonable, and far removed from the plain and natural meaning of the term. Actually, it would appear that the motion made could properly be considered a legal technicality, inasmuch as the motion arose out of law, was governed by law, was peculiar to the legal profession, and is provided for under our procedure. In *Words and Phrases,* Vol. 40, page 524, as relating to criminal law, substantive law is defined as "that which declares what acts are crimes and

prescribes punishment therefor.'' Procedural law is ''that which provides or regulates the steps by which one who violates a criminal statute is punished.'' Substantive law is ''that part of the law which creates, defines, and regulates rights, as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion.'' Here, the two terms rather merge, for the right to an examination is included in substantive law, and the motion to obtain that right is a matter of procedure. Be that as it may, we find no merit in the contention, for even though the term be literally incorrect, we cannot agree that it carried with it the implications set out in appellant's complaint.

It is not contended that paragraphs B, C, D, and E are false (in fact, appellant admitted in oral argument that all of the rest of the events reported in the article are correctly stated); it is only contended that the story was slanted and maliciously designed to defame appellant's reputation. Appellant's allegations from paragraph B through E, in full, are as follows:

''B. 'Duncan's hearing before Judge Colvin was held Tuesday evening, and Paul K. Roberts, Warren attorney, was appointed as the Negro's lawyer.' The above quoted paragraph was maliciously designed to associate and did associate the name of the attorney and the 'Negro's Lawyer' together in an attempt to invoke public hatred, contempt and in an attempt to damage plaintiff's reputation and was an attempt to infer that the Attorney's character was similar to the alleged character of the Negro; that the above quoted paragraph was designed to conceal and did conceal the fact that the court appointed the attorney to the duty he entered upon and into and that the attorney could not refuse the appointment.

C. 'Prosecuting Attorney A. James Linder of Hamburg asked Roberts if he really thought (that the defendant might be insane) that or if he was ''grasping at straws''. Roberts assured the Court that he felt the Negro might be insane.' The above quoted paragraph was designed to leave the impression and did leave the im-

pression with all who read said article that the attorney was insincere in making the said motion; that said motion on the part of the plaintiff was just a 'legal technicality' and could have no possible merit thereto.

D. 'Judge Colvin deliberated about the motion for several minutes before granting Roberts' motion, but he told those present that under the law he was forced to do it.' The above quoted paragraph was designed to leave the impression upon all who read said article and did leave the impression upon all who read same that the alleged 'legal technicality' spoken of heretofore was so obnoxious to the court that the court reluctantly granted the said motion; that the above quoted paragraph proves that the above paragraph was written with evil design for the reason that the paragraph states 'but under the law he (the court) told all present that under the law, he was forced to do it'; That the above quoted paragraph was designed to leave the impression and did leave the impression with all who read same that the attorney had through trickery, chicanery, and the use of a legal loophole been able to defeat justice; that the above quoted paragraph was designed to mislead all who read same into the belief that the motion was improper when in fact said 30 day examination is generally accepted as a prerequisite to the final hearing of a case of the same nature as the one with which A. C. Duncan was charged.

E. 'At the start of the hearing, a representative of this newspaper received the permission of Judge Colvin to take candid camera pictures while the hearing was going on. After court started, however, Attorney Roberts raised an objection to the photographer's being allowed to take pictures. No more were taken.' The above quoted paragraph was designed to leave the impression and did leave the impression with all those who read said article that through the 'legal technicality' of the attorney the photographer was deprived of a right to take pictures; the above quoted paragraph was designed to conceal the fact that photographers are barred from courtrooms by law and said paragraph was a deliberate

attempt on the defendants' part to damage and defame plaintiff's reputation."

If the allegations in paragraph B constitute a cause of action, then libel is committed any time a newspaper reports that a white attorney represents a Negro in a criminal action. The assertion that the phrase stating that Roberts was appointed as the Negro's lawyer "was an attempt to infer that the attorney's character was similar to the alleged character of the Negro" transcends any reasonable interpretation that could be given the words, and the article plainly stated that Roberts was appointed.

In quoting the remark of the prosecuting attorney in open court, the newspaper demonstrated its good faith by stating "Roberts assured the Court that he felt the Negro might be insane." Paragraphs D and E relate to a factual report of the proceedings, and we are unable to ascribe to this report the meaning, impression, or interpretation given it by appellant. Incidentally, photographers are not barred from courtrooms by law in this state; the prohibition arises under the Judicial Code of Ethics promulgated by the American Bar Association.[2]

There are several defenses to a suit for libel, among them the conditional privilege accorded to newspaper reports of judicial proceedings. However, since we are of the view that the publication herein involved is not susceptible of a defamatory meaning, it is irrelevant whether the conditional privilege attaches, and we see no reason to discuss this defense. Likewise, though the factual report appearing in the article was admittedly true (except that appellant alleged the term "legal technicality" to be false), our conclusions are not based upon that

---

[2] The Code of Judicial Ethics was adopted by the State Judicial Council of Arkansas in September, 1958, and Section 35, pertinent hereto, reads as follows: "Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room, during sessions of the court or recesses between sessions, and the broadcasting or televising of court proceedings are calculated to detract from the essential dignity of the proceedings, distract the witness in giving his testimony, degrade the court, and create misconceptions with respect thereto in the mind of the public and should not be permitted.  *  *  *"

premise, for we do not say unequivocally or dogmatically that one can never be libeled by a statement, even though true. Rather, we determine this litigation on the basis of the fact that when this article is construed as a whole, considering the words in their plain and natural meaning, according to the sense in which they appear to have been used, and the ideas such words would convey to those who read them — the article is not libelous. In other words, the article is not susceptible of a defamatory meaning.

We think the public is generally cognizant of the fact that attorneys are appointed to represent indigent prisoners. The story plainly states in the second paragraph that appellant was appointed as the Negro's lawyer. There is nothing in the article which even remotely indicates that Roberts sought this appointment or desired to represent the defendant. In view of public sentiment and the probable outraged feelings of the community toward a crime of this nature, we can readily understand appellant's sensitivity to the article; we daresay that numerous instances have arisen wherein people have been embarrassed by seeing their name in print, though no wrongful act had been committed, but under our system of government and its democratic processes, a free press is assured. Certainly, this is as it should be. As stated in Article II, Section 6, of the Constitution of the State of Arkansas:

"The liberty of the press shall forever remain inviolate. The free communication of thoughts and opinions is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right."

The article in question is not an abuse of this right.

We deem it proper, in view of appellant's sincere feelings, to point out that in representing this defendant, he was only carrying out a duty imposed upon him by virtue of his profession, and as a member of the Bar of Arkansas. Canon IV of the Canons of Professional Ethics provides:

"A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, *and should always exert his best efforts in his behalf.*[3]"

We commend this attorney, as indeed any attorney should merit commendation, for his compliance with this Canon, which assures diligent representation to any prisoner, irrespective of the crime charged. The right of representation is fundamental to the American concept of justice. Here, Mr. Roberts, though apparently finding his duty distasteful, did not equivocate, nor seek to escape, from the responsibility assigned to him.

No cause of action having been stated by the complaint, the judgment is affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. This case comes up after a demurrer to the complaint was sustained. It is the rule in Arkansas that allegations of a complaint are accepted as true on demurrer. *Glenn* v. *Union Bank & Trust Company,* 150 Ark. 38, 233 S. W. 798. This being so, I am convinced the appellant raised a *prima facie* case and the evidence should have gone to the jury. After all, there is only one basic question here and that is the effect of the article on the plaintiff's reputation in the community. There are two ways to find this effect. One is from the evidence the plaintiff would have produced. The other is by giving certain meaning to words used in context as the majority has here. This second method is inexact, to say the least.

I do not agree with the majority statement that this article could obviously not be libelous *per se.* If the article is false and tends to injure the plaintiff's reputation and thereby expose him to public hatred, contempt, or shame, it is libelous *per se. Hall* v. *Binghampton Press Co.,* 29 N. Y. S. 760.

The question of falsity in this case revolves around the use of the term "legal technicality". In arriving at

---

[3] Emphasis supplied.

a conclusion as to whether the defendants' use of the term was true or false under the circumstances I don't believe we should substitute a dictionary definition of the term for a jury finding. The plaintiff should have the benefit of any meaning ascribed to the phrase by his neighbors, and possible clients, in his community. *Jackson* v. *Williams*, 92 Ark. 486, 123 S. W. 751. The cause should be tried on its merits, not by this court as an Appellate jury.

For the reasons stated above, I respectfully dissent.