# ROGERS *v.* STATE.

## Opinion delivered December 15, 1894.

1. *Error in instructions—When not prejudicial.*

    Where, under an indictment for murder, defendant is convicted of manslaughter, error in defining the higher degrees of homicide is not prejudicial to defendant.

2. *Homicide—Death from several wounds.*

    Where one inflicted two wounds upon another, the first in self defense and the second not, and death followed, he is guilty of some degree of homicide if the second wound either caused death, or contributed to or hastened it, even though death would have resulted from the first wound in a short time ; but if the second wound would neither have caused death, nor have contributed to or hastened it, then he could not be convicted of any degree of homicide, but might be convicted of an assault.

3. *Self-defense—"Great bodily injury."*

    It is error to define "great bodily injury" in the statute relating to self-defense (S. & H. Dig. sec. 1676), to mean "a felony committed on the person," the phrase meaning a high degree of injury, as opposed to a slight injury.

4. *Power of court to admonish counsel.*

    Where counsel announces to the jury propositions of law which are incorrect and misleading, the court may orally admonish him to desist ; but if the admonition contains a statement of law, the court should, at request of counsel, reduce it to writing, and, if necessary, repeat it in its written form to the jury.

5. *Witness—Competency of presiding judge.*

    A judge presiding at a criminal trial cannot, against the objection of the defendant, be sworn and testify as a witness for the prosecution.

6. *Evidence—Sufficiency of objection.*

    It is immaterial that an objection to the testimony of a witness fails to show whether the ground of objection is the competency of the witness to testify, or the competency of the evidence itself, if the objection was well taken in both cases.

7. *When withdrawal of incompetent evidence does not cure error.*

    The error of admitting incompetent evidence is not cured by a direction to the jury not to consider it if it is clearly apparent that such direction did not remove its prejudicial effect.

Appeal from Yell Circuit Court, Dardanelle District.

JEREMIAH G. WALLACE, Judge.

STATEMENT BY THE COURT.

The appellant, Rogers, was indicted by the grand jury of Johnson county for the crime of murder. The indictment alleged that he killed and murdered one M. L. Kernoodle in said county by shooting him with a pistol. A change of venue was taken to Yell county, and the case was there tried. The evidence showed that Rogers and Kernoodle became engaged in a combat in the town of Clarksville; near the barber shop in which Kernoodle worked; that they had only struggled a moment before Rogers drew a pistol from his pocket, and shot Kernoodle. Kernoodle turned, and ran into his shop, screaming, "Murder!" As he entered, or was about to enter, the door of the shop, which was only a few steps away, Rogers fired again. Kernoodle staggered to the back part of the shop, sank down on the floor, and expired almost instantly. The ball from the first shot entered the front part of the body near the left nipple, and that from the second entered the back near the spine. Both balls passed entirely through the body, and both, in the opinion of the medical experts, were fatal wounds, though they did not feel quite so certain that the last wound would have destroyed life as they did that this result would have followed from the first wound alone. There was a conflict in the evidence as to whether Rogers or Kernoodle was the aggressor in the combat. From some of the evidence, one might conclude that the killing was premeditated on the part of Rogers; that he armed himself, and, going to the shop where Kernoodle worked, beckoned him to come out, and then, having willingly entered into a combat with him, deliberately killed him. There is other evidence which contradicted this, and tends to show that Ker-

noodle was the agressor, and that, being a large and powerful man, he walked up to Rogers, and, after some words, without provocation struck Rogers a violent blow with his fist, pushed him against the wall, and was about to throw him down, when Rogers fired the first shot. There was some proof tending to show that, at the time Kernoodle struck Rogers, he was armed with a razor, although this was contradicted by other proof. The other facts will sufficiently appear from the opinion. The jury found the defendant guilty of the crime of voluntary manslaughter, and assessed his punishment at five years in the penitentiary.

*A. S. McKennon, J. E. Cravens* and *Martin & Murphy* for appellant.

1. The twelfth instruction given for the State is erroneous. If the first shot was fired in self-preservation, the second was due to the same impulse. The court should have given the fourth asked by defendant. It states the law correctly. 2 Bish. Cr. Law, secs. 636–7; Kerr on Hom. secs. 32, 33; 14 Gratt. 592; 5 Jones (N. C.), 420.

2. The second, ninth and eleventh instructions given by the court are erroneous. 35 N. E. 64; *Ib.* 1105; 32 Ark. 763; 40 N. W. 784; 20 S. W. 737.

3. No instruction upon the theory of an unprovoked assault was given. The sixth should have been given. When a party has reason to and does believe that he is in danger of losing his life, or of receiving great bodily harm, he may use any means at hand to repel the attack, even to taking life, and this is so whether the danger is real or apparent. 32 N. E. 725; 13 S. W. 651; 26 Am. Rep. 52; 23 *id.* 733; 8 *id.* 744; 12 *id.* 200; 32 N. E. 780; 12 S. W. 733.

4. It was error for the judge to testify, over the

objection of defendant. The withdrawal of the testimony did not cure the prejudicial error.

5. The court erred in defining "great bodily harm," and in refusing to reduce it to writing. 51 Ark. 177; 2 Archb. Cr. Pr. & Pl. Marg. p. 265; 1 Russ & Ry. C. C. 362; 1 F. & F. 88; 9 C. & P. 267; 8 *id.* 248; 2 Moody, C. C. 40; 1 Leach, Cr. C. 71; Jacob's Fish. Dig. vol. 3, p. 3468; 4 Ark. 56.

6. The conduct of the prosecuting attorney was prejudicial.

*Jas. P. Clarke,* Attorney General, and *Chas. T. Coleman* for appellee.

RIDDICK, J., (after stating the facts.) We need not consider the objections urged against the definitions of the words "willfully" and "deliberately" contained in instruction No. 1, given by the court. The object of those definitions, we suppose, was to inform the jury concerning the distinctions between the different degrees of homicide. As the defendant was only convicted of manslaughter, it is plain that, whether erroneous or not, they did him no harm. We find no error in either of the instructions numbered 2, 9 and 11, given by the court on its own motion, and to which defendant excepted. When taken in connection with the other instructions, we think they state the law as favorably to appellant as he had the right to demand.

The twelfth instruction given by the court, and to which the defendant objected, is as follows: "12. If the jury believe that the defendant inflicted upon the body of the deceased two mortal wounds, that both wounds were necessarily fatal, and either of which, independent of the other, would have produced and resulted in the death of the deceased within a short time, of which two wounds the jury believe the deceased died, and the jury further find that the deceased had in

1. When error in instructions not prejudicial.

2. Self-defense where death results from several wounds.

good faith declined all further contest with defendant, and that, whilst deceased was fleeing from him, defendant inflicted the second fatal wound upon the body of the deceased by shooting him a second time, although the jury might believe the defendant fired the first shot in self defense, the killing would not be justifiable, but would amount to manslaughter only."

It is said by Mr. Bishop that "whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible if death follows, he will be deemed guilty of the homicide, though the person beaten would have died from other causes, or would not have died from this one had not others operated with it; provided the blow really contributed either mediately or immediately to the death in a degree sufficient for the law's notice." 2 Bishop's New Crim. Law, sec. 637. To same effect see *Kee* v. *State*, 28 Ark. 160.

If the defendant fired the first shot in necessary self defense, and then afterwards, when Kernoodle had abandoned the contest, and was fleeing, he again fired upon him, inflicting another wound, when the circumstances were not such as to make a reasonable man in his situation believe that he was then in immediate danger of great bodily injury, he would be guilty either of some degree of homicide, or of an unlawful assault, depending upon the question whether or not the wound inflicted by the last shot either caused, contributed to, or accelerated his death. In other words, if the last shot was not fired in necessary self defense, and the wound inflicted by it either caused his death, or contributed to or hastened it, the defendant would be guilty of some degree of homicide, even though the first shot was fired in self defense, and though, at the time the last shot was fired, the deceased was already so severely wounded that his death would have followed in a very short time. On the other hand if the first shot was fired in self

defense, and the last shot neither caused his death, nor contributed to, or hastened it, then he could not properly be convicted of any degree of homicide, but might be convicted of an assault. _Davis_ v. _State_, 45 Ark. 464.

The court, in giving instruction No. 12, doubtless had these rules of law in his mind, and the instruction, abstractly considered, is nearly correct, if not entirely so; but we doubt if in this case it presented the question in such a way as to let the jury understand that, in the event the first shot was fired in self defense, then it became material for them to determine whether the last shot contributed to or hastened his death. Instruction No. 4 asked by the defendant substantially covered the law on this point, but it was rather long, and also stated that if the second shot did not contribute to the death of deceased, the jury must acquit; whereas they might still have found defendant guilty of an assault.

Another question raised by counsel is concerning the meaning of the phrase "great bodily injury." One of the counsel for defendant, in the course of his argument before the jury, stated that the law books did not define such phrase, whereupon the court interrupted him, and said that the law books did define it, and that its meaning was "a felony committed on the person." To this remark of the court defendant excepted at the time, and now contends that it was not a correct statement of the law, and that, even if correct, it should have been reduced to writing. It was held in _Regina_ v. _McNeill_, 1 Crawford & Dix, 80, that to constitute "a grievous bodily harm," under a statute of Geo. IV, it was not necessary to show that the wound be on a vital part, or that the injury be of a permanent nature, or that life be endangered thereby, but that proof that the prisoner committed an assault with a deadly weapon, whereby a severe wound was inflicted, was sufficient to sustain an

3. What is a "great bodily injury?"

indictment for an assault to inflict grievous bodily harm. In the case of *Lawlor* v. *People*, 74 Ill. 230, the court said that the phrase "serious bodily injury" meant substantially the same as "great bodily injury," and that the meaning of both was a "high degree of injury, as opposed to a slight injury." The phrase "great bodily injury" is difficult to define, for the reason that it well defines itself. It means a "great bodily injury," as distinguished from one that is slight or moderate, such as would ordinarily be inflicted by an assault and battery with the hand or fist without a weapon. To put one in danger of great bodily injury from an assault, something more than attack with the hand or fist would usually be required, and it would rarely happen that one might lawfully take the life of another to avoid an assault with the fist only. But cases might be supposed when it would be justifiable to do so; for an assault and battery by a powerful man with his fist upon a weak one might be carried to such extreme severity as to produce great bodily injury, and yet be unaccompanied by such circumstances as to make it a felony. One who intentionally commits a great bodily injury upon the person of another may or may not be guilty of a felony, depending upon the circumstances; but, as such an injury may, under some circumstances, be committed, and still the offender not be guilty of a felony, it is therefore not accurate to define "great bodily injury" as "a felony committed on the person." What constitutes a great bodily injury, and whether the circumstances in any case are such as to justify one in believing that such an injury is about to be committed upon him, and in defending himself against it, are matters which must be left, to a great extent, to the judgment of the jury.

**4. Power of court to admonish counsel.**        It is also contended that the court, before making this remark concerning the meaning of the phrase, "great bodily harm" or "injury," should have reduced it to writing ;

but we do not think this contention is well taken. It is
the duty of the court to restrain the remarks of counsel
within proper bounds. If, in the opinion of the court,
counsel should announce propositions of law to the jury
which are incorrect and misleading, the court should
admonish counsel so that he may desist. It is not nec-
essary to stop to reduce the admonition to writing before
making it; but if it contains a statement of law calcu-
lated to influence the verdict of the jury, the court
should, at request of counsel, reduce the same to writ-
ing, and, if necessary, repeat it in its written form to
the jury. No request was made to reduce this remark
to writing. The general request to put all instructions
in writing can not be held to cover this remark, for it
was not intended as a part of the instructions, but only
as a correction of what was conceived to be a misstate-
ment of the law in the part of counsel.

During the progress of the trial the presiding judge
was called as a witness, and, over the objections of the
defendant, testified on behalf of the State. His testi-
mony was, in substance, that at a former term of the
court, before the change of venue was taken, the defend-
ant had filed a motion for continuance on account of the
absence of one Bert Cunningham, whom he alleged was
a material witness in his behalf. Afterwards Bert Cun-
ningham appeared, and, defendant having made an appli-
cation for bail, the judge in open court notified the attor-
neys of defendant that they might take the testimony of
said Cunningham to be used on the application for bail;
to which notification the attorneys of defendant made no
response, and took no steps to procure the testimony of
said Cunningham.

It was not shown that the defendant was present at
the time this notification was given to his attoneys, or
that he in any way approved of the conduct of his attor-
neys in this regard; on the contrary, defendant testi-

<div style="text-align: right; font-size: small;">5. Calling
the presiding
judge as wit-
ness.</div>

fied that he had been in prison, and did not know such notification was given. This evidence tended to make the impression that defendant had endeavored to procure a continuance on account of the absence of a witness whose testimony he did not want, when the failure to take this deposition may have been due to the neglect of his attorneys, and through no fault of the defendant.

We think it clear that the testimony was incompetent. The trial judge seems to have arrived at the same conclusion, and afterwards, acting as a court, excluded the testimony which he had given as a witness. But the question still remains whether a judge, while presiding at a trial of a criminal case, may, against the objection of the defendant, testify as a witness on the part of the prosecution. The only reference to this question we find in our statute is sec. 2965 of Sandels & Hill's Digest. That section is as follows : "The judge or juror may be called as a witness by either party ; but, in such cases, it is in the discretion of the court to suspend the trial and order it to take place before another judge or jury ; and when a party knows, at the time the jury are impaneled, that a juror is to be called by him as a witness, he shall then declare it, and the juror shall be excluded from the jury." This section was taken from the Code of Practice in Civil Actions, and is the same as sec. 660 of that code. There is a provision in the Code of Criminal Practice that the provisions of the civil code shall apply to and govern the summoning and coercing the attendance of witnesses and compelling them to testify in all criminal prosecutions; but that provision, we think, refers to the chapter of the civil code regulating the issuance of subpœnas for witnesses and attachments for contempt. It does not refer to the competency of witnesses. While there are other portions of the civil code applicable to criminal proceedings, we do not find anywhere that this section is to apply to such proceedings ;

on the contrary, the language of the section itself fur-
nishes convincing proof that it was only intended to
apply to civil cases. It states that when the judge or
juror is called as a witness, it is in the discretion of the
court to suspend the trial, and order it to take place
before another judge or jury. It is plain that, on a trial
of a defendant for a felony, after the jury are impaneled
and sworn, the court would have no power, without the
consent of the defendant, to suspend the trial and order
it to take place before another jury. So we conclude
that this section was not intended to apply to criminal
proceedings, and that we have no statute permitting a
judge to testify as a witness in a criminal trial over
which he is presiding.

In the absence of such a statute we think it clear
that a judge cannot testify under such circumstances.
It has been held in England that a judge may give
evidence, but that if he does so, he must descend from
the bench, and cannot return thither during the trial.
Sichel's Practice Relating to Witnesses, 14.

This rule was applicable to trials where the court
was composed of several judges. In such a court, a
judge might descend from the bench, testify, and take no
further part in the trial of the case without interfering
with the progress of the trial. Speaking of this ques-
tion, Mr. Rapalje says: "If the judge sits alone, he
cannot be sworn at all; and if he be one of several judges,
he ought not to be, unless he leaves the bench during the
trial. In such a case, the maxim that "no one shall be
both judge and witness in the same cause prevails."
Rapalje on Witnesses, sec. 45.

This question came before the Supreme Court of
New York in a case where one of the two judges presid-
ing had testified, and Folger, J., who delivered the opin-
ion of the court, said that it was erroneous, "because
such practice, if sanctioned, may lead to unseemly and

embarrassing results, to the hindering of justice and to the scandal of the courts." In the same opinion, referring to the same matter, he says: "Other considerations may be added. If a judge is put upon the stand as a witness, he has all the rights of a witness, and he is subject to all the duties and liabilities of a witness. It may chance that he may, for reasons sufficient to himself, but not sufficient for another of equal authority in the court, decline to answer a question put to him, or in some other way bring himself in conflict with the court. Who shall decide what course shall be taken with him? Shall he return to the bench, and take part in disposing of the interlocutory question thus arising, and, upon the decision being made, go back to the stand, or go into custody for contempt? The first would be unseemly, if not unlawful, for it would be passing judicially upon his own case. The last would disorganize the court, and suspend its proceedings. Other like results may be conceived as possible, equally as contrary to the good conduct of judicial proceedings." *People* v. *Dohring*, 59 N. Y. 374.

This reasoning applies with even greater force where the court is composed of only one judge, for, if the judge of such a court takes the stand to testify against the defendant, there is no one to control his testimony or keep him within proper bounds. Even if he can control his own testimony, and discharge, at the same time, what have been called "the incompatible duties of witness and judge," yet, however careful and conscientious he may be, the chances are great that by thus testifying he will to some extent detract from the dignity that should surround the functions of his high office. Instead of the impartial judge administering the law with a firm and even hand, he takes on for the time the appearance of a partisan, endeavoring to uphold by his testimony one side against the other. More than likely he provokes

unseemly conflicts between himself and counsel, and arouses the distrust of the party against whom he testifies. In addition to this, the higher his character and standing as a judge, the more danger that he thus gives the party in whose favor he testifies an undue advantage over the opposing side. For these reasons, in the interest of the dignity and decorum of the circuit court, and the orderly procedure therein, we feel compelled to hold that a judge presiding at a criminal trial cannot, against the objection of the defendant, be sworn and testify as a witness on the part of the prosecution. Bish. Cr. Pro. sec. 1145; Underhill on Ev. sec. 313.

We do not mean to intimate that in this case there was any partiality shown by the learned judge of the circuit court. The record shows to the contrary. The section of the Digest above referred to is calculated to mislead, if not read carefully, and the mistake arose from being compelled to construe it in the hurry of a *nisi prius* trial. There were objections made to other rulings of the court, but, when taken in connection with the facts of this case, we do not discover any error except as above indicated. For those errors the judgment is reversed, and the cause remanded for a new trial.

---

Supplemental Opinion Filed January 26, 1895.

PER CURIAM. On the argument for rehearing, it was contended that no proper objection was made or exception saved to the action of the judge in taking the stand as a witness, and that for that reason the judgment should not be reversed. The language of the objection and exception is as follows: The presiding judge was "sworn as a witness on the part of the State; and he testified, against the objection of the defendant, touching an application for continuance, etc." At the close of his testimony there was an exception in the fol-

*6. Sufficiency of objection to evidence.*

lowing words: "To the introduction of this evidence the defendant objected, but the objection was overruled, and the defendant at the time excepted." In the motion for new trial the following is set up as one of the grounds for a new trial: "The court erred in allowing himself to be introduced as a witness on the part of the State in rebuttal, against the objection of the defendant, and in testifying, etc." "The office of the objection," says Judge Elliott, "is to present to the trial court the specific grounds upon which the court is asked to act in giving a decision, so that the court may be fully informed as to the reason for the ruling sought by the objecting party." On the other hand "an exception is not required to present specific grounds or reasons upon which a ruling is asked, for an exception follows the ruling, while an objection precedes and lays the foundation for the exception." Elliott, Appellate Pro. 726.

In his objection preceding the testimony of the judge, the defendant gives no reason why he objects, and, in this respect, the objection is defective, as the objection should state the grounds on which it is based, unless otherwise apparent. *Vaughan* v. *State*, 58 Ark. 373 ; *Hurley* v. *State*, 29 Ark. 17 ; *Blackburn* v. *Morton*, 18 Ark. 392.

As the objection does not state the grounds on which it is based, it is not clear whether this objection was to the competency of the witness or to the competency of his testimony. As the bill of exceptions shows another and distinct objection to the introduction of the testimony, it would seem that the first objection was to the competency of the witness, and we so treated it in deciding the case. But if we take the objection as one to the competency of the evidence only, the result must be the same ; for while, as a general rule, an error in admitting incompetent testimony is cured by afterwards excluding it, to this rule there are exceptions.

If the case is one where the appellate court can clearly see that the direction to the jury not to consider the evidence did not remove the prejudicial effect, it comes within the exception to the rule. Elliott, App. Pro. sec. 702; *Holder* v. *State*, 58 Ark. 482.

7. Withdrawal of incompetent evidence.

Apart from the incompetency of the judge as a witness, his testimony was also incompetent for reasons stated in the opinion. It tended to show that the defendant had not acted in good faith in making his application for continuance at a former time; that he had made an application for a continuance on account of the absence of a witness whose presence he did not desire. Our constitution forbids judges from charging juries on questions of fact, and this was a statement of facts by the judge to the jury from which they might readily draw conclusions very damaging to the defendant. It was, in effect, an expression of an opinion by the presiding judge to the jury unfavorable to the conduct and veracity of defendant. Although the court excluded the testimony, the jury still had this opinion of the presiding judge in their minds, and we think the prejudicial effect remained. Even if it be conceded that the defendant failed to object to the competency of the judge as a witness, he did object to the competency of his testimony, and under such circumstances we cannot say that the defendant had a fair and impartial trial; and the motion to rehear must be denied.