Charles Lee HANCOCK, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–670.

Court of Appeals of Arkansas.

March 2, 2011.

Timothy R. Leonard, Hamburg, for appellant.

Dustin McDaniel, Atty. Gen., John T. Adams, Asst. Atty. Gen., for appellee.

DOUG MARTIN, Judge.

Appellant Charles Hancock was convicted of possession of ephedrine, pseudoephedrine, or phenylpropanolamine with intent to manufacture methamphetamine and sentenced to six years in the Arkansas Department of Correction. On appeal, Hancock raises two arguments for reversal, contending that '1) the circuit court erred in allowing the statement of a witness, Joseph James, to be read into evidence, and 2) the court erred by interjecting, on its own initiative, evidence that had not been introduced at trial.

On May 12, 2009, agent Jason Akers of the Tenth Judicial District Drug Task Force received information from a confidential informant that certain individuals were making a "pill run" in Monticello. Akers described a "pill run" as when a group of individuals go together and "make a big loop" around various pharmacies in town to buy cold pills that contain ephedrine or pseudoephedrine, which are ingredients in methamphetamine. On the basis of the informant's tip, Akers stopped a van driven by Hancock; with Hancock were Joseph James and Tommy Smith. Upon searching the van, Akers and the other officers involved discovered four boxes of ephedrine.

Hancock was originally charged with possession of drug paraphernalia with intent to manufacture methamphetamine. The charge was later amended to possession of ephedrine, pseudoephedrine, or phenylpropanolamine with intent to manufacture methamphetamine. *See* Ark.Code Ann. § 5–64–1102(a) (Repl.2005).

Prior to trial, Hancock filed a motion in limine seeking to preclude the State from introducing any testimony or other evidence alluding to the fact that, at the time Hancock was arrested, there was a minor child in the vehicle. The court granted the motion at a hearing just prior to trial, finding that the child's presence was irrelevant at the guilt-innocence phase of the trial. During Akers's trial testimony, however, the State asked Akers who was in the van when it was stopped, and Akers replied that he did not know whether he could "tell you everybody that was in the van." At the conclusion of Akers's testimony, the court, on its own initiative, informed the jury that there had been a child in the van. Hancock moved for mistrial, and the court denied the motion.

Later during the trial, the court permitted Akers to read a portion of a statement that Akers took from Joseph James. The court overruled Hancock's objection to this testimony, finding that it came within the "recorded recollection" exception to the hearsay rule. *See* Ark. R. Evid. 803(5). In that statement, Jones said that Hancock had asked him to buy cold pills at Fred's Pharmacy and at a Walgreens.

The circuit court subsequently denied Hancock's motion for directed verdict and his renewed motion at the close of the defense's case. The jury convicted Hancock of possession of pseudoephedrine with intent to manufacture and sentenced him to six years' imprisonment and a $5000 fine. Hancock filed a timely notice of appeal and now raises the two arguments described above for reversal.

In his first argument on appeal, Hancock contends that the circuit court abused its discretion when it permitted Akers to read Joseph James's statement into evidence over Hancock's hearsay objection. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rodriguez v. State*, 372 Ark. 335, 337, 276 S.W.3d 208, 211 (2008); *Morris v. State*, 358 Ark. 455, 193 S.W.3d 243 (2004). Moreover, we will not reverse absent a showing of prejudice. *Rodriguez*, 372 Ark. at 337, 276 S.W.3d at 211.

During the course of Hancock's trial, the State called James to testify. James, who was in the van with Hancock at the time of his arrest, stated that Hancock asked him to go into Fred's Pharmacy and purchase pills. James denied, however, recalling whether anyone in the van said anything about the reason for purchasing cold pills. He said that no one said anything about having a cold, and when asked whether he knew why he was asked to purchase cold pills, James stated, "I mean, I don't—nobody said nothing but, I mean, I can assume. I don't really know what to say." James further testified that he was questioned by the police and gave a statement, although he did not write it. On cross-examination, James explained that he could not read or write, so the police asked him questions and wrote his answers on a piece of paper that he initialed.

The State later called Special Agent John Carter. Carter testified that he was present when the van driven by Hancock was searched and that he saw boxes of pseudoephedrine in the van at that time. Carter then testified that he spoke to James at the stop; however, when the State asked Carter whether James said anything about the pills, Hancock objected on hearsay grounds. The following colloquy then occurred between the court, defense counsel (Mr. Leonard), and the State (Mr. Best):

Mr. Best: Your Honor, yes, but it's for impeachment purposes as he was un-

able to remember what he told the officer.

MR. LEONARD: Well, then he would have to impeach—

THE COURT: What was your question again?

MR. BEST: If he told the officer the purpose for the possession of the drugs.

THE COURT: If "he," meaning—

MR. BEST: Joseph James.

THE COURT: Joseph James. If he told the officer. Well, correct me if I'm wrong, but I believe Mr. James—this won't cure your objection—what he said was reduced to writing, and he initialed.

MR. BEST: Yes.

THE COURT: May I see that statement?

MR. LEONARD: [At the bench.] Your Honor, he testified—

. . . .

THE COURT: Let me go over it. [Reading.] Okay. Let me ask you. Six of one, half a dozen of the other. You can either ask it for impeachment purposes, this officer, or you can put— What was your decision on not just asking him at the time, I was wondering, the witness?

MR. BEST: Your Honor, I was concerned about the admissibility of this evidence. I should have offered it to him to refresh his memory.

THE COURT: Or, yeah, or for impeachment purposes, so six of one, half a dozen of the other. He can get it in through him as a prior inconsistent statement.

Defense counsel then objected that the statement was not admissible as a prior inconsistent statement because it had not been given under oath and subject to cross-examination. The court then suggested that the officer who took the statement could be recalled for the State to "[a]sk him if that's what he told him and he wrote and then bring the other man in, and then you can ask the other man did he give that statement." The court pointed out that "it's already been gone over about—by James himself that a statement was taken from him. That would probably be sufficient to get it in but go on and be safe and put the [officer who took the statement] on."

The State called Agent Akers to the stand. Akers testified that he recognized the statement, having taken it from James. Akers said that he took the statement in a question-and-answer format, writing it himself and having James initial it. Akers further explained that his practice was to take a statement and then go over it with the person giving it "and say this was the question and this was your answer, is that correct?" He would then have the person being interviewed place their initials after each answer and sign at the bottom of the page and at the conclusion of the interview.

The State then asked Akers to read the next-to-last question on the second page, and Hancock objected, citing Arkansas Rule of Evidence 801(d)(1)(i).[1] The court agreed that James's answer was a prior statement that had not been made under oath, but suggested that the statement could nonetheless come in under Rule 803(5), the recorded-recollection exception

---

1. Rule 801(d)(1)(i) provides that a statement is not hearsay if

    [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... inconsistent with his testimony and, if offered in a criminal proceeding, was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a [deposition].

to the hearsay rule. The court pointed out that James had already testified that he did not recall his statement to police, and that testimony thus laid a foundation for allowing the testimony under the recorded-recollection exception. The court then allowed Akers to read an excerpt from James's statement in which James attributed numerous incriminating comments to Hancock.

On appeal, Hancock argues that the circuit court's ruling allowing Akers to read James's statement into evidence was an abuse of discretion. Arkansas Rule of Evidence 803(5) provides that the following is not excluded by the hearsay rule:

> *Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

This court has held that two elements must be established to provide a foundation for such a recorded recollection to be read into evidence at trial: "first, there must be evidence that the recordation was *adopted* by the declarant; second, there must be evidence that the recordation was *accurately recorded.*" *Lawrence v. State*, 81 Ark.App. 390, 394, 104 S.W.3d 393, 395 (2003) (emphasis in original). In *Lawrence*, this court considered whether a record prepared by a party other than the declarant was admissible under Rule 803(5) in the absence of testimony by both the declarant and the recorder that the information was true and that the recordation was accurate. The court concluded that "[b]oth participants must ordinarily testify, the *reporter vouching for the accuracy of the oral report* and *the recorder for the accuracy of the transcription.*" *Lawrence*, 81 Ark.App. at 394, 104 S.W.3d at 395 (emphasis in original) (citing 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.10(5) (2d ed.2002)). Because, in that case, the declarant affirmed in the statement that he was telling the truth and the police officer who was present testified to the accuracy of the transcription, the court held that the statement was properly admitted under Rule 803(5). *Id.*

In the present case, on the other hand, nothing in the portions of the statement read into the record by Akers made any mention of whether James affirmed the statement to be true. Additionally, James never testified about whether the statement he gave to Akers was true. At best, James testified that the police asked him questions and then wrote the questions and James's answers on a piece of paper, which James subsequently initialed. Moreover, Akers also failed to verify the accuracy of the transcription of James's statement. Although Akers acknowledged that he took the statement from James and explained the process by which he took it, Akers never testified that the statement was accurately recorded, unlike the situation in *Lawrence, supra.* Because there was neither evidence that the recordation was adopted by the declarant nor evidence that the recordation was accurately recorded, we conclude that the circuit court erred in allowing Akers to read the statement into the record. Although the State asserts that the introduction of the statement was not prejudicial, we disagree. The circuit court specifically referenced James's statement in denying Hancock's motion for directed verdict, relying on it as evidence of Hancock's intent to

manufacture methamphetamine. As such, we conclude that the introduction of James's statement constituted reversible error.

In his second point on appeal, Hancock asserts that the trial court erred when it informed the jury that there had been a child in the back of the van when the officers pulled Hancock over.[2] As mentioned above, Hancock filed, and the trial court granted, a motion in limine seeking specifically to exclude evidence of the child's presence.[3] During Agent Akers's testimony, however, the State asked who the other occupants of the van were, and Akers replied, "I don't know if I can tell you everybody that was in the van." He then went on to name Hancock, Joseph James, and Tommy Smith.

At the conclusion of Agent Akers's testimony, the court offered the following commentary:

Gentlemen, before this witness leaves the stand, I've made a decision on my own. I know we went through this at pretrial and so on, and you all agreed not to—for the witnesses, and that's one of the reasons you went up there—not to mention all those in the van. When asking the question who all was in the van, I saw [Akers] hesitate. And it's unfair to the witness and to the jury for them to take that hesitation as some indication that information is being withheld from them by a police officer, that

might bear upon the case. Mr. Leonard [defense counsel], I know your views on it and your objection to the other person being mentioned, but regardless of that, and you agreed for that person not to be mentioned, and ordinarily I would not because it doesn't have anything to do with this case, as I'm going to tell the jury.

But out of fairness to the jury and to the witness, because of the hesitation, and it's almost like being, with that question being asked, it's almost like asking the witness to tell a story, and that's not fair to him and plus, I trust a jury, if they know the picture, I trust a jury if I tell them who was there and it had nothing to do with the case. It is better to trust them with all the information than it is to leave the impression, that's my trial experience, that somebody's being cagey or something is being withheld, the officer hesitated. Then I don't want it on him. So you've already made your record on it and you have, too. And if there's some reason for it to go up on appeal, I could care less if the Court of Appeals reverses me on it because I've done what I think is right. Because ordinarily I would exclude it, but because of the hesitation and because he was actually asked in a way not to give the full picture. I'll trust them with it and you've made your record on it.

---

2. Although we have reversed on the first issue and would not ordinarily address the second argument raised on appeal, we feel that the issue raised in Hancock's second point is not unlikely to arise again on retrial. As previously mentioned, the circuit court granted Hancock's motion in limine to exclude the challenged evidence prior to his first trial, which ended in a mistrial, and then granted the motion again during the second trial. Despite having twice granted the motion in limine, the court nonetheless provided the excluded information to the jury. To prevent this error from happening again, we address Hancock's second argument herein. *See, e.g., Burton v. State,* 367 Ark. 109, 238 S.W.3d 111 (2006).

3. Hancock argued that the child's presence was irrelevant because he had not been charged with child endangerment, and the State agreed that it was not relevant (although the prosecutor asserted that he intended to introduce that information at sentencing).

The other person in the van was a child. The reason that that is not admissible is because of the fear or possible—Number one, is [*sic*] has nothing to do with whether or not he possessed pseudoephedrine with intent to manufacture. And only relevant evidence is supposed to be given to the jury, evidence that is probative of whether or not this man is guilty, and whether or not a minor was in the van, has nothing to do with that. Yet the law or common sense would tell a judge that a jury or someone on the jury might think, oh, my gosh, I'm going to hold it against him, there was a child or something in the car, because of the way we feel about children, and that it would influence their decision on guilty or not guilty. So ordinarily I'd of [*sic*] kept it out. But it's not fair to this witness either for him to have to hesitate and maybe you all get the impression that he's holding something when he was really just doing what in a sense he was told. I trust you to know who all was in there, and I'm instructing you that, regardless of whether a child was in there or not, that you're not to hold it against Mr. Hancock in deciding whether the State has proven its case beyond a reasonable doubt. The King of Siam could have been in there, and it wouldn't affect any evidence that you should consider on the reason that he had the precursors. And that's what you must decide, as I appreciate it, not whether he had precursors but the reason that he was obtaining them and possessing them. That's going to be your job to decide. And if there were ten children present or one, it should and I hope will not have any-

thing to do with that. But I'd rather trust you with that information and discount my fear that you will hold it against him than to have this witness compromised or that his hesitation you think somebody is up to something when they're [*sic*] weren't. We were just trying to keep as clean a record as possible and keep any non-relevant evidence away from your consideration. I hope you understand.

Hancock then moved for a mistrial, which the circuit court denied.

It is well settled that a judge cannot be both a witness and a judge in one proceeding. *See* Ark. R. Evid. 605 ("The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point."); *Huffman v. Fisher*, 337 Ark. 58, 69, 987 S.W.2d 269, 275 (1999). A judge is, in effect, incompetent to testify. 3 Trial Handbook for Arkansas Lawyers § 7.18 (2010–2011 ed.). Long before Rule 605 was adopted, the supreme court held that "a judge presiding at a criminal trial cannot, against the objection of the defendant, be sworn and testify as a witness on the part of the prosecution." *Rogers v. State*, 60 Ark. 76, 29 S.W. 894 (1894).

Although the judge was not sworn as a witness here, his comments had the same effect as testimony. By informing the jury that there had been a child in the back of the van, the court provided the jury with information that it had not received through any of the State's witnesses—information that the State, the defendant, and the court had all previously agreed was irrelevant and thus inadmissible.[4]

---

**4.** Further, as Hancock points out, the court had no independent personal knowledge of this fact. Even assuming that the court had somehow been competent to offer testimony

(which, of course, it was not), the court's introduction of this evidence was in violation of Rule 602 of the Arkansas Rules of Evidence. ("A witness may not testify to a mat-

Moreover, a trial judge has no right, either directly or indirectly, to express to the jury his opinion upon the weight of the evidence. *Thomas v. State,* 107 Ark. 469, 472, 155 S.W. 1165, 1166 (1913). By expressing concern that the jury might infer from Akers's alleged hesitation that Akers was somehow being untruthful in his testimony, the court was essentially, and improperly, bolstering Akers's credibility as a witness. The supreme court has noted that

> [i]n all trials the judge should preside with impartiality. In jury trials especially, he ought to be cautious and circumspect in his language and conduct before the jury. He should not express or intimate an opinion as to the credibility of a witness, or as to controverted facts. For the jury are the sole judges of fact, and the credibility of witnesses; and the constitution expressly prohibits the judge from charging them as to the facts.

*Jordan v. Guinn & Etheridge,* 253 Ark. 315, 318, 485 S.W.2d 715, 718 (1972) (quoting *Ratton v. Busby,* 230 Ark. 667, 326 S.W.2d 889 (1959)).

It goes without saying that a trial judge should refrain from advocacy, especially in a criminal jury trial, and "[t]he presentation of a litigant's case in an adversary proceeding should be left to the initiative of counsel who has the responsibility to represent the interest of his client." *Britt v. State,* 334 Ark. 142, 165, 974 S.W.2d 436, 447 (1998) (quoting *Oliver v. State,* 268 Ark. 579, 594 S.W.2d 261 (Ark.App.1980)). Here, although the State argues that the court's commentary resulted in no prejudice to Hancock, the court's abandonment of its role as impartial arbiter in order to bolster the credibility of a

witness for the State was tantamount to charging the jury with the facts. By commenting that it would "rather trust you with that information and discount my fear that you will hold [the child's presence] against [Hancock] than to have this witness compromised or that [by the witness's] hesitation you think somebody is up to something when they're [*sic*] weren't," the court essentially told the jurors that it was more important that they believe one of the State's witnesses than that Hancock receive a fair trial free of irrelevant, inadmissible, and prejudicial evidence. Such action by the circuit court is, of course, reversible error, and we therefore reverse and remand for a new trial.

Reversed and remanded.

PITTMAN and HART, JJ., agree.

---

ter unless evidence is introduced sufficient to support a finding that he has personal knowl-

edge of the matter.")