Cite as 2025 Ark. App. 573

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-175

| | |
|---|---|
| SAMUEL GOLDEN | Opinion Delivered December 3, 2025 |
| APPELLANT | |
| | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FCR-23-297] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE R. GUNNER DELAY, JUDGE |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

A Sebastian County jury convicted appellant Samuel Golden of possession of drug paraphernalia and the lesser-included offense of simple possession of methamphetamine.[1] He was sentenced as a habitual offender to an aggregate term of thirty-six years' imprisonment. On appeal, Golden argues that this case should be reversed and remanded for a new trial because the judge became a witness at his jury trial and that the trial court erred in not allowing him the option to obtain substitute counsel.[2] We affirm.

---

[1]Golden was acquitted of the greater offense of possession of methamphetamine with purpose to deliver.

[2]In *Golden v. State*, 2025 Ark. App. 73, defense counsel initially filed a "no-merit" brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(b) of the Rules of the Arkansas Supreme Court and Court of Appeals; however, we denied defense counsel's

I. *Background*

Law enforcement officers, who were also members of the drug task force for the twelfth judicial district, received information that Albert Evans was living in and selling drugs out of the Continental Motel in Fort Smith. They established surveillance of the motel, determined that Evans was there, and watched him coming and going from the motel. A person later identified as Golden arrived at the motel and went inside the room with Evans. After Golden came out of the room, the officers detained him and asked Evans to come outside. The officers then entered the motel room, found drug paraphernalia, and saw controlled substances in plain view. Golden was searched, and the officers found two baggies in different pockets containing what a forensic chemist later confirmed was methamphetamine: 26.8103 grams in one baggie, and 0.6151 grams in the other baggie.

II. *Discussion*

A. Judge as Witness

Golden first argues that the trial court erred in reading at his jury trial his (Golden's) sworn statements from a previous hearing on the State's petition to revoke ("PTR") his probation. Golden asserts that there is no question that the trial court enhanced the credibility of the testimony by reading his (Golden's) words into the record, thereby becoming a witness himself. Golden points to Ark. R. Evid. 605, which provides that the judge presiding at the trial may not testify in that trial as a witness and that no objection is

_____

motion to withdraw and remanded to settle and supplement the record. On rebriefing, defense counsel chose to submit a brief in adversary form.

2

needed in order to preserve the point. Golden cites and relies on *Hancock v. State*, 2011 Ark. App. 174, 381 S.W.3d 908, in which we reversed and remanded a drug conviction when the trial court, after granting Hancock's motion in limine to keep out any mention of the fact that a child had been in a van with him when drugs were found, then told the jury that there was a child in the van. The prosecutor had asked a witness about who else was in the van, and the witness, drug-task-force agent Jason Akers, had hesitated and said that he was not sure he could say, i.e., because of the motion-in-limine ruling. We stated,

> Although the judge was not sworn as a witness here, his comments had the same effect as testimony. By informing the jury that there had been a child in the back of the van, the court provided the jury with information that it had not received through any of the State's witnesses—information that the State, the defendant, and the court had all previously agreed was irrelevant and thus inadmissible.

*Id.* at 11, 381 S.W.3d at 914. We noted that a trial judge has no right, either directly or indirectly, to express to the jury his or her opinion on the weight of the evidence. We said that "[b]y expressing concern that the jury might infer from Akers's alleged hesitation that Akers was somehow being untruthful in his testimony, the court was essentially, and improperly, bolstering Akers's credibility as a witness." *Id.* at 11, 381 S.W.3d at 915.

Unlike *Hancock*, there was an agreement to introduce Golden's previous testimony and for the jury to consider it as evidence. No one was surprised by what the judge did here. Both parties essentially acknowledged that the information was both relevant and admissible. Trial courts have broad discretion in deciding evidentiary issues, and we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *Powell v. State*, 2025 Ark. App. 338, 715 S.W.3d 148. Abuse of discretion is a high threshold that does not

3

simply require error in the trial court's decision but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* We do not reverse unless the appellant demonstrates that he was prejudiced by the ruling. *Id.*

On November 14, 2023, Golden filed a motion in limine to exclude the statements made by him at a PTR hearing. On November 16—the day of Golden's trial—a hearing was held on his motion. The following colloquy shows that an agreement was reached:

| | |
|---|---|
| [DEFENSE COUNSEL]: | . . . We clarified kind of what I was wanting and everything and we have straightened that out because we will just—for clarification, and I wanted to make sure that we had—what is going to be happening in this case, Judge, is there is going to be a statement introduced in the case in chief for the State, it is my understanding, about Mr. Golden's testimony at the P.T.R. hearing. However, there will be no reference that it was a criminal proceeding. That way it doesn't prejudice the jury in knowing that Mr. Golden has a prior on that. |
| THE COURT: | How will that testimony be elicited, just to make sure? |
| [PROSECUTOR]: | Your Honor, what we had talked about last night is if the Court is willing to do this is to simply be that the Court would make a statement to the jury that the Court would read a portion of testimony from a prior hearing where the Defendant testified; that the jury is to take that as though it were testimony coming in, giving it whatever weight it deems appropriate. Then, have the Court read the questions and the answers that we have highlighted from the testimony. |
| [DEFENSE COUNSEL]: | That is acceptable, Your Honor. |
| THE COURT: | Can I take a look at what you have prepared? |
| [PROSECUTOR]: | Yes, sir. |

| | |
|---|---|
| THE COURT: | At what point are you wanting the Court to— |
| [PROSECUTOR]: | Your Honor, we would actually like the Court to do that prior to or after opening statements are done and prior to taking the first witness. |
| THE COURT: | And just reading the highlighted portions? |
| [PROSECUTOR]: | Yes, sir. |
| [DEFENSE COUNSEL]: | Your Honor, that testimony from the previous P.T.R. hearing, I believe, was put on the record before Mr. Golden testified he had been advised of his constitutional rights. |
| [PROSECUTOR]: | Your Honor, I actually believe that is right above the highlighted portion. If the Court goes up just a little bit it does note that he was advised of his rights. |
| THE COURT: | Where it says, "Mr. Golden, I have advised you before this that anything that you say you have got a jury trial coming up. Anything you say can be used against you in that trial. Do you understand that?" It looks like he replied, "Yes, sir." |
| [DEFENSE COUNSEL]: | Yes, and that wouldn't be read to the jury, but thank you for reading that into the record this morning, Judge. |

Before reading Golden's previous testimony to the jury, the trial court asked defense counsel if the following instruction was satisfactory: "The Court has been asked to read testimony given by Mr. Golden in a previous legal proceeding while under oath. And it will be made a part of the evidence in this case." Both defense counsel and the prosecutor responded that the instruction was "perfect." When the jury was present, the trial court read the preliminary instructions, and opening statements were given. Before the State called its first witness, the trial court read Golden's previous testimony as follows:

5

Q.   Do you also understand sometimes being straight up, we talked about this, can be the best thing even though you still face the punishment? Do you understand that? Tell us why you were there.

A.   On that day in question I was there to purchase methamphetamine.

Q.   And how much did you pay for the methamphetamine?

A.   $200.00.

Q.   And there has been testimony regarding the—on your person, the methamphetamine about 26 grams. You heard the officer testify that that was off your person; is that correct?

A.   Yes, sir.

Q.   Was that your methamphetamine?

A.   It was mine. (End reading of testimony).

In *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994), the trial court answered questions by the jury in a procedure agreed to by the appellant, and the appellant later argued that the trial court had erred in doing so. Our supreme court said that "[a]n appellant cannot agree to the trial court's disposition of an issue and then on appeal argue that the trial court erred in doing what he agreed the trial court could do." *Id.* at 359, 878 S.W.2d at 390.

We reject Golden's claim that by reading Golden's previous testimony to the jury, the trial court then became a "witness" at his jury trial when the trial court simply agreed to Golden's request to admit his previous testimony as evidence. The procedure for admitting Golden's testimony from the revocation hearing was specifically agreed to—in fact, the manner in which it was admitted was orchestrated by Golden and the prosecutor—and

Golden cannot now complain that it was erroneous. We hold that there was no abuse of discretion.

## B. Option to Obtain Substitute Counsel

On September 20, 2023, at an inquiry hearing, the appointed public defender announced to the trial court that Golden "wishes to go to trial on this matter. It is my understanding also, Your Honor, that he wishes to fire me, and I don't mean out of a cannon." The following exchange occurred:

| | |
|---|---|
| THE COURT: | Well, Mr. Golden, do you have the resources available to hire a private attorney? |
| [GOLDEN]: | Your Honor, I am working on that right now with my family and everything going on. I didn't plan on getting arrested last week. I was just trying to get a continuance for my medical issues that I had going on. So, that was all kind of just, you know, above me cut off and I was on a workers' comp case and everything. So, the time got cut off on all of that angle. So, Your Honor, I have just kind of been bambuzzled [sic] by all this. I will be filing an appeal on the P.T.R. deal and I just feel like Mr. Honeycutt has not had my best interest in mind through this whole deal. I would like to just change, have a chance to change attorneys. |
| THE COURT: | Well, you are set for trial the week of November the 13th with a plea deadline of October the 23rd. If you want to hire a private attorney, you are certainly entitled to do that. |

At a "possible plea" hearing held on November 14, Golden said that he had fired defense counsel at the inquiry hearing. The public defender said, however, that he was still attorney of record. After much back and forth about the possible plea, which was ultimately rejected, the trial court said that the case would be tried on November 16.

7

Golden asserts that it was apparent that he was displeased with appointed counsel at the inquiry hearing. He argues that "[i]t is clear that [he] desired the opportunity to obtain a different attorney, but had not yet done so" for various reasons. Golden further asserts that his "request" was made almost two months before his jury trial was set to begin. He states, "Nevertheless, only two days prior to the jury trial, there was still no opportunity for [him] to obtain his own attorney . . . ." Golden argues that he "made multiple complaints" about his counsel and that "included therein" was the fact that he wanted to fire his defense counsel and hire his own attorney. He asserts, however, that he was "precluded" from doing so.

A request for substitution of counsel may be treated as a motion for continuance because a change of attorneys close to trial may require the grant of a continuance. *Raino v. State*, 2021 Ark. App. 331. Once competent counsel has been obtained, any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice. *Abernathy v. State*, 2024 Ark. App. 532, 699 S.W.3d 842. A trial court's denial of a continuance will not be overturned absent a showing of abuse of that discretion, and an appellant must also demonstrate prejudice amounting to a denial of justice. *Price v. State*, 2009 Ark. App. 664, 344 S.W.3d 678.

Here, Golden did not move for a continuance, and he did not request a change of counsel. At most, Golden asked for *a chance* to change attorneys and was told that he was "certainly entitled" to hire his own attorney, thus giving him that chance to hire counsel of his choosing in the two-month period before his trial was set to begin. Golden, however, had not hired anyone during that time. When a defendant has not identified a counsel of choice,

8

he is not manifestly deprived of that choice. *Abernathy*, *supra.* Moreover, although Golden claimed to have been "working on" either collecting the funds to hire a private attorney or selecting a private attorney, no newly retained counsel appeared on Golden's behalf at his trial, even though Golden claimed to have "fired" his appointed counsel at the inquiry hearing two months earlier. The trial court had made Golden aware that he was welcome to hire his own attorney, thus giving him the opportunity to hire someone else in the two months leading up to his trial. The trial court did not prevent Golden from obtaining substitute counsel. Further, even if the trial court had abused its discretion with regard to a continuance or substitution of counsel, Golden has not even attempted to show any resulting prejudice.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.